### NEW YORKER HOTEL CORPORATION
### v. PUSATERI et al.
#### No. 5486.

United States District Court
W. D. Missouri, W. D.

Filed Nov. 3, 1949.

As Amended Nov. 4, 1949.

Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, Mo., for plaintiff.

Hershel H. Goodman, B. T. Hurwitz, of Kansas City, Mo., for defendant.

DUNCAN, District Judge.

This is an action for damages for unfair trade practices charged against the defendants through the operation of a hotel, restaurant and bar in Kansas City, Missouri under the name of "The Hotel New Yorker" or "New Yorker Hotel" or "Pusateri's New Yorker Hotel."

Plaintiff is a New York corporation and the defendants are residents of Kansas City, Missouri.

There is no serious dispute as to the facts upon which the plaintiff bases its conclusion that it is entitled to injunctive relief. Since January 1930 the plaintiff has operated a hotel in the City of New York under the name of "Hotel New Yorker" located at 34th Street and Eighth Avenue. It contains 2500 rooms and is modern in every particular, including recreational features, dining rooms, restaurants, banquet rooms, facilities for industrial, business and trade displays, conventions, and large meetings of all kinds.

Its clientele comes from all over the United States and many foreign countries. It is probably one of the best known hotels in the United States, and among its patrons are included several thousand from Missouri each year, and several hundred from Kansas City. It has issued credit cards to a large number of persons throughout the country – nearly 400 of whom are in Kansas city. It has a highly organized business promotion division, the duty of which is to solicit patronage from various groups throughout the United States who anticipate holding conventions, business conferences and other types of meetings in New York City, as well as from individual guests, and to this end, large sums of money have been expended in various types of advertising in newspapers, magazines and periodicals, advertising plaintiff's facilities.

From 1943 to 1948 more than $666,000.00 was expended in such advertising, and it is reasonable to assume that in the future, because of the greater competition and less demand for hotel accommodations by the public generally than during the War period, that such sums necessary to be expended for advertising will be considerably increased.

Plaintiff's advertising media during that period was circulated in Kansas City through trade journals, department store publications, some newspapers and other types of advertising, the readers of which usually patronize hotels of the type of plaintiff's.

Through the conduct of its business the plaintiff enjoys an outstanding reputation as a hotel, so operated and conducted as to satisfy the demands of the most exacting among the traveling public. In a general way, to refer to the name "Hotel New Yorker" implies the plaintiff's hotel. It has no chains or branches in any other city of the United States. The name "Hotel New Yorker" is displayed prominently by a large sign on plaintiff's hotel.

The defendants, brothers, have been engaged in serving food in Kansas City for approximately thirty years, and during that time they have built up a reputation for serving fine food; they have had several locations in Kansas City. They started in a small way, and conducted their business until 1940 under several different names, but always associated with the name "Pusateri."

From 1920 to 1932 they operated under the name of "Merchant's Lunch"—"Oak Street Tavern"—in 1933 "Pusateri's Bar" or "Pusateri's Taproom"—1938—"Pusateri's Restaurant." From about 1934 to 1938 "Pusateri's Hyde Park" a first class eating place located in the Hyde Park Hotel at 35th and Broadway in Kansas City.

Prior to 1940 there was operated at 1102–04 Baltimore Avenue in Kansas City

by persons other than the defendants, the "Milwaukee Delicatessen" – in 1939 (there may be some dispute about this, but I think the record bears it out) the operators of the "Milwaukee Delicatessen" changed its name to "New Yorker Bar and Restaurant." The defendants, prior to that time had been operating a restaurant and bar under the name of 'Pusateri's Restaurant" at 1213 Baltimore Avenue in Kansas City, and acquired from the operators thereof, the "New Yorker Bar and Restaurant" located at 1102–04 Baltimore Avenue, as aforesaid.

The operation at 1213 Baltimore was discontinued and they operated the "New Yorker Bar and Restaurant" in addition to "Pusateri's Hyde Park" in the Hyde Park Hotel heretofore described, until about September 1948 at which time they leased the Bray Hotel at 1114 Baltimore Avenue, Kansas City, and disposed of the "New Yorker Bar and Restaurant" at 1102–04 Baltimore Avenue. Prior to this time they had not been engaged in the operation of a hotel; their activities had been confined entirely to the operation of restaurants and bars.

The defendants' hotel is nine stories high and 25 feet wide, and contains approximately 85 rooms. Following its acquisition by the defendants, they made extensive improvements. At the time of the trial, between $355,000.00 and $365,000.-00 had been expended in remodeling and improving the hotel building and furnishings, and in building and equipping with modern facilities a restaurant and bar on the first floor and a small bar room on the second floor.

There is a small office and lobby in the front of the building, and the bar and restaurant are arranged to the rear of this lobby and office. The entrance to the bar and the restaurant parallels the front office or lobby to the extent thereof before it enters the bar room. The restaurant is immediately back of the bar room and is 25 feet in width, as is the bar room, being divided by columns or an archway.

The words "New Yorker" appear on the floor mats leading to the bar room. Across the top of the large plate glass window in front of the office are the words "New Yorker." The letters are about 12 inches in height and are at the extreme top of the plate glass and immediately beneath the marquee. Upon the wall of the entrance leading to the bar and restaurant, there is a large bronze placque bearing the name "Pusateri's since 1920." Over the entire portion of the glass back of the bar is painted, not too expertly or realistically, a view of the New York skyline and New York harbor.

A perpendicular Neon sign about 30 feet in height was erected on the front of the building, visible from both directions, north and south. This sign is placed several feet from the face of the building. Perpendicularly thereon in large black block type letters originally appeared the name "New Yorker." Immediately to the bottom of such perpendicular portion of the sign and as a part thereof, there is a horizontal base upon which appears the word "hotel" and below that on the same horizontal arm, in script in smaller letters is the word "Restaurant." The sign thus read:

" N
E
W
Y
O
R
K
E
R
HOTEL
Restaurant"

Plaintiff's hotel also has a large sign, as shown by plaintiff's Exhibit 5, which is attached to the front of the building and above the marquee over one of the entrances. Upon the sign appear the words "Hotel New Yorker." The structure to which the letters are attached is entirely different in design from that of defendants' hotel, as shown by plaintiff's exhibits 17 et seq. The letters are comparable, but not exactly the same. In both signs the letters are of large black block type. It would appear that there is nothing unusual or particularly distinctive about such type of letters.

Linens, towels, ash trays, soap, coat hangers, napkins, sanitary glass covers and other accessories incident to the operation of a hotel either bore the name "Hotel New Yorker" or "New Yorker" or "New Yorker Hotel."

Prior to the opening of the hotel, considerable advertising was prepared and inserted in numerous advertising facilities in and about Kansas City, such as the "Buyer's Guide"—"Tavern Talk"—programs and other publications. The telephone book carried the listing "New Yorker Hotel" and the listing was repeated in the classified hotel section as "Hotel New Yorker."

Most of the advertising incident to the opening of defendants' hotel either used the title "Pusateri's New Yorker Hotel" or "Pusateri's Hotel New Yorker" and in practically every instance where the name "Pusateri's" did not precede the words "New Yorker" the name was prominently displayed and referred to in such advertising.

In all of the advertising, since the addition of the name "Pusateri's" to the top of the sign on the front of the building, the hotel has been designated as "Pusateri's New Yorker Hotel." In a few instances some classified advertisements have been inserted in the name of "Hotel New Yorker" or "New Yorker Hotel" without the use of the name "Pusateri's."

A large number of notices were sent out by the defendants announcing the opening of the hotel, including one to the plaintiff. Upon learning of the proposed opening of the "New Yorker Hotel" in Kansas City by the defendants, the plaintiff wrote them a letter protesting the use of the name, and demanding that they discontinue its use, claiming the sole right to the use of such name.

After such notice and either just before or shortly after this suit was brought, defendants added to the perpendicular sign the name "Pusateri's." This was done by adding an arm to the top of the sign horizontally, and placing thereon in script, the name "Pusateri's" corresponding to the word "Restaurant" at the bottom, thus making the sign in the shape of an "I" and now reading:

> "Pusateri's
> N
> E
> W
> Y
> O
> R
> K
> E
> R
> HOTEL
> Restaurant"

The building immediately to the north of the defendants' nine story hotel building is a one story structure, thus leaving most of the side of defendants' building exposed to view, and along the side thereof, near the top, defendants, at the time of the opening, had caused to be painted in large letters, the words "Hotel New Yorker." At the time the change in the front sign was made, there was added to this sign immediately above the words "New Yorker" the name "Pusateri's" in large letters conforming in type to the name "Pusateri's" on the front of the hotel, thus making this sign also read:

> "Pusateri's
> N E W  Y O R K E R
> H O T E L
> Restaurant & Cocktail Lounge
> Completely Air Conditioned"

Over the entrance a marquee was constructed across the entire width of the building and extending over the sidewalk. (Plaintiff's Exhibit 18).

At the top of the marquee and attached thereto on the north and south sides thereof, the name "Pusateri's" appears in large letters. The marquee is constructed of stainless steel and the letters apparently are of like material. The letters extend entirely across the marquee, which is probably ten feet in width. The "P" and "T" in the word "Pusateri's" are considerably larger than the other letters, and in height are approximately two feet. The other letters are a foot or more in height. Below these letters and along the north and south sides of the marquee and attached

thereto are the words "Famous Steaks and Cocktails." (Ex. 23) All of the letters are Neon lighted.

At the time of the trial the defendants were continuing to use such supplies as towels, glass covers and other daily hotel necessities bearing only the name "New Yorker" and "New Yorker Hotel;" it was testified by James Pusateri that it was impossible to change the lettering upon these supplies, particularly the towels, blankets and other things into which the name had been woven, but that as rapidly as replacements were necessary, they were adding the name "Pusateri's" to the name "New Yorker Hotel." The stationery was changed to include the name "Pusateri's." The laundry lists which were supplied by the laundries had not been changed by adding the name "Pusateri's."

The manager of "Pusateri's New Yorker" testified that the uniforms of the bell boys were beige and maroon. The plaintiff contended that they are maroon and grey and correspond exactly in color to the uniforms of plaintiff's bell boys. The distinction is probably the difference between tweedle-de-dee and tweedle-de-dum, so far as color is concerned.

There was no evidence to show that the hotels are in competition or that at this time the plaintiff has sustained any damage, and it admits that it proved no damages, and it claims none.

The foregoing I believe to be a fair statement of the facts about which there is little controversy.

The plaintiff contends that by reason of the extensive and expensive publicity and advertising campaign conducted by it over a long period of time throughout the entire country, and the patronage which it has attracted, it has attained for its name a secondary meaning which entitles it to the exclusive use thereof, in the operation of a hotel. That although there might be no actual competition, the mere use of the name by another might tend to confusion or suggest association of the enterprises and result in reflection upon plaintiff's reputation, thus resulting in loss of trade and patronage.

■ I agree with plaintiff that its name has attained a secondary meaning or significance. Outside of local circles, i. e., Kansas City, or some other city where there may be a hotel of such name, a reference to the name "Hotel New Yorker" would imply—and the inference would be clear—the plaintiff's hotel.

■ Defendants contend that the name "New Yorker" is a geographical name and is not subject to exclusive appropriation by any person. Plaintiff disagrees with the contention. I think it is a geographical word, but that does not render it incapable of attaining a secondary meaning and of exclusive appropriation subject to the rules of law applicable under such conditions. The rule was well expressed in Western Auto Supply Co. v. Knox, 10 Cir., 93 F.2d 850, 852 where it was said:

"Confined to their primary meaning, geographical words and words which are merely descriptive of the merchandise are not capable of exclusive appropriation. But, where words of that character have been used so long and so exclusively by a trader or distributor with reference to his merchandise that they are generally understood to mean and denote such merchandise, they acquire a secondary meaning quite apart from their primary significance and he may restrain their perfidious use by another *if it causes deceit and injures his business.*" (Emphasis supplied.)

Or as said in another case, R. W. Eldridge Co., Inc., v. Southern Handkerchief Co., D.C., 23 F.Supp. 179, loc. cit. 184:

" 'But it is well settled, we think, that a geographic name or term may acquire such a secondary meaning as to remove it from the "generic or descriptive" designation which renders it incapable of individual appropriation, and make it subject to rights which equity will, within proper limits, protect. In other words, a geographic name can, and frequently does, acquire a meaning which causes it to become something other than merely geographic, or solely geographic, or only geographic.' "

While, undoubtedly, there are other "Hotel New Yorkers" or "New Yorker Ho-

tels" they are of little prominence as compared to the plaintiff, and I am convinced that plaintiff's name, by reason of its national and international prominence, has attained a secondary meaning and is entitled to the protection that such geographical names, under such conditions, are entitled to.

I cannot agree with the suggestion that adding the letter "er" to the words "New York" make it "fanciful" rather than "geographic." I think the words "Hotel New Yorker" or "New Yorker Hotel" or "New Yorker" are neither "odd," "fanciful," "strange" or in any respect unusual.

■■ In its ordinary meaning it would designate a citizen or former citizen of New York, which certainly cannot be adopted or appropriated exclusively, any more than the word "Missourian" or "Pennsylvanian" may be, unless the requirements necessary to acquire a secondary meaning are clearly met. There is a greater burden upon one claiming such distinction than there is respecting "Fanciful" names.

"Equity gives a greater degree of protection to 'fanciful' trade names than it accords to names in common use." Stork Restaurant v. Sahati, 166 F.2d 348, loc. cit. 355.

Having determined that the name is a "geographical" one and that it has by its wide publicity and patronage attained a secondary meaning, the question is whether or not there is reasonable likelihood of confusion in the use of the name "Pusateri's New Yorker Hotel & Restaurant."

The fact that plaintiff's hotel has 2500 rooms, with a world-wide reputation as one of the greatest hotels, is 1250 miles from Kansas City, the location of defendants' hotel, which hotel is 25 feet wide and nine stories high, containing 85 rooms, may not of itself settle the question. Stork Restaurant v. Sahati, supra.

■■ Mere distance or disparity in size is not determinative of the question of competition or likelihood of confusion, but I think such facts should be considered along with others in determining the question of whether there is a possible danger of confusion of identity, resulting in damage to reputation and credit and loss of prestige.

Plaintiff has cited many cases where the use of trade names has been enjoined. In most of those cases the names fell within the "fanciful" name class, or the wrongdoers by advertising, tokens and other means were imitating the business whose name they had appropriated. They were taking a "free ride"—"reaping where they had not sown." That is not the situation here. There is no evidence here that the defendants are taking a "free ride" on plaintiff's name, or are "reaping where they have not sown." Nor am I able to find any evidence of the use by them of symbols, or tokens or simulated advertising aside from the name itself.

For eight years the defendants had operated the "New Yorker Restaurant," a few doors from their present location. They acquired the name with the business, the name having been changed by the former owner from "The Milwaukee Delicatessen" (a geographical name) to the "New Yorker Restaurant," (another geographical name). It was a name which they continued to use without protest, until they acquired the hotel. They had "sown" in this "field" and from 1943, three years after they acquired the business, until September 27, 1948 the date the hotel opened, they reaped to the extent of $1,201,036.09. Broken down into annual receipts it was:

| | |
|---|---|
| 1943 | $135,346.44 |
| 1944 | 186,974.90 |
| 1945 | 235,052.12 |
| 1946 | 246,104.37 |
| 1947 | 222,695.78 |
| 1948 | 175,462.48 (Jan. 1 to Sept. 27) |

The earnings for the first three years were not made available.

The plaintiff in its reply brief concedes that it could not have complained of the use of the name "New Yorker" in connection with the bar and restaurant, even if plaintiff had known of its use. It is in joining thereto the word "hotel" to which it complains.

It is not unusual that after the use of the name "New Yorker" in a prosperous business for eight years defendants should take it with them when they acquired the new business, and add thereto the word "hotel" to designate their new business. The word "hotel" is one that any one may use to describe such an enterprise. So they combined a name which they long had rightfully used and a word which no one may exclusively appropriate.

■ These facts seem to negative any accurate charge of bad faith on the part of the defendants in the choice of the name, and should be a complete answer to a charge of a "free ride" on plaintiff's reputation.

Plaintiff says that the similarity of colors of the uniforms and the New York skyline and waterfront upon the glass back of the bar are symbols designed to confuse. As heretofore stated, the scene is a rather poor reproduction of New York's skyline and waterfront. The uniforms are similar in color. I think we may safely say that the view of the New York skyline, like that of the Statue of Liberty, belongs to the world. There is a marked similarity between uniforms worn by bell boys in many different hotels.

The evidence does not reveal that defendants have at any time been guilty of misrepresentation, or by any manner or means have they attempted to confuse the public as to a connection between the two hotels. On the contrary, as heretofore stated, in practically all of their advertising they have connected with the name of the hotel the name "Pusateri's" which was well known in the restaurant and drink business in Kansas City.

The inference I draw from the evidence—advertising exhibits mostly—is that defendants were attempting to simply continue what they had and add to it—a consolidation of such good will as the name "New Yorker" had developed as a restaurant and bar with that of the name "Pusateri" in the various locations where they had operated.

■ We know as a matter of common knowledge that there are many hotels throughout the country which bear the same names, but have no connection with one another, and are in no sense competitive, are not confused with one another, and are not likely to be confused. Seeing the name "Congress Hotel" in Kansas City is not likely to be confused with the same name in Chicago. The same may be said of the many—"Ambassador"—"Pennsylvanian"—"Broadmoor"—"Mayflower" hotels and scores of others throughout the country.

Plaintiff produced two witnesses who were "seasoned travellers" familiar with plaintiff's hotel and others in New York and other cities, who said that upon seeing defendants' sign they wondered if it had any connection with plaintiff's hotel. On cross examination such witnesses had not felt such reaction to the names of other hotels in Kansas City which bore the same names as nationally and internationally known hotels of the same name elsewhere.

■ In its effort to show that defendants may operate their hotel in such manner as to reflect upon its good name, plaintiff attacks the reputation of defendants. Defendant James Pusateri admitted that they illegally sold intoxicating liquor in their restaurants during prohibition. Plaintiff also sought to show that defendant Gus Pusateri, who did not testify, has been convicted of violating the liquor law. The offer was denied on the ground that the conviction was more than sixteen years ago—during the "dry era."

There is no evidence that the defendants have not conducted themselves in an upright manner in the conduct of their business since long before they began using the name "New Yorker." The amount of their investment is such that they are likely to continue to do so.

■ So long as the name "Pusateri's"—a name well known in the restaurant and bar business in Kansas City—precedes the name "New Yorker Hotel" I am unable to find that there is any reasonable possibility of confusion of names or likelihood of associating this hotel or the management thereof with plaintiff's hotel in any manner or form that would result in

damage or injury to plaintiff or its good name, or in any wise result in damage to it.

In view of the foregoing, the finding and judgment will be and is against plaintiff.

The Respective parties may submit Findings of Fact, Conclusions of Law and decree in accordance herewith.