47 CCPA

**DAGGETT & RAMSDELL, INC.**

v.

**I. POSNER, INC.**

**Patent Appeal No. 6525.**

United States Court of Customs and Patent Appeals.

May 3, 1960.

Martin and Smith, Judges, dissented.

Mead, Browne, Schuyler & Beveridge, William E. Schuyler, Jr., Andrew B. Beveridge, Washington, D. C. (Francis C. Browne, Washington, D. C., of counsel), for appellant.

Howard A. Rosenberg, New York City, for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge FRANCIS L. VAN DUSEN.[*]

VAN DUSEN, Judge.

On March 17, 1955, I. Posner, Inc. (hereinafter "Posner") filed an application for the registration of the following mark for a "Pressing Cream for the Hair":

> POSNER'S e  
>     r  
>    i  
>   a  
>  n  
> o  
> b  
> e

The description of the goods in the application was later amended to read, "A hair treatment kit consisting of a pressing cream, a cosmetic scalp cream and a cream curl."[1] Use of the mark since January 1954 was alleged. The registration was opposed by Daggett & Ramsdell, Inc. (hereinafter "D & R"), as owner of the registered trademark, "Debonair," for "After shaving Lotions, Hair Tonics and Perfumes, Cologne, Deodorants and Talcum,"[2] asserting that Pos-

---

[*] United States District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 292(d), Title 28 U.S.C.

[1] The appropriateness of the use of the word "kit" has been questioned by the

Trademark Trial and Appeal Board (R–63, fn. 2).

[2] Reg. No. 538,612, issued February 27, 1951. There is also evidence that "Debonair" was used on a "Hair Cream Lotion" and a "Dandruff Control Hair Dressing" (R–53).

ner's proposed mark so resembles its own registered mark as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers.[3] The Trademark Trial and Appeal Board unanimously decided on December 17, 1958, that "Considering the differences between both the marks and goods involved, it is concluded that confusion in trade would not be likely." Accordingly, the opposition was dismissed and this appeal was taken pursuant to Section 21 of the Lanham Act.

Posner has urged upon this court that its product is so substantially different in its composition and use from those of the opposer that no confusion as to origin could possibly arise in the mind of the public, no matter how similar the marks may be. Posner asserts that its product is designed for use by Negro women to remove kinks from their hair and must be used in connection with a heavy comb and a hot curling iron. It was admitted at oral argument, however, that its creams are not sold exclusively in kits with the necessary equipment for application. Therefore, one would have to read the directions in order to discover that the heavy comb and curling iron were necessary. Furthermore, Posner's Cosmetic Scalp Cream does not require this unique equipment for application. Also, neither trademark indicates that the goods on which it appears are for use by members of one sex rather than the other. Under these circumstances, it does not appear to this court that Posner's goods are so different from D & R's Cream Hair Lotion that confusion is improbable for this reason alone.

The applicant also argues that confusion is improbable, irrespective of similarity of marks, because its product is sold exclusively through stores while D & R's products are only sold door-to-door by the Fuller Brush Company. Neither party is restricted by its registration or application to a particular channel of trade, however. Under these circumstances, the present sales methods are not conclusive in this type of proceeding.[4] This was pointed out in In re Fleet-Wing Corporation, 188 F.2d 476, 478, 38 CCPA 1039, where it was stated:

"The emphasis placed by appellant on the environment of sales is not appropriate because the application for registration does not limit sales in any particular manner or to any particular stores or stations and it is well established that sales methods are subject to change at any time."

Thus, it is clear that the final resolution of this dispute hinges on whether or not the marks in question differ sufficiently so that, when applied to the parties' products, it is not likely that purchasers will be confused. D & R asserts that it is improper to give any weight to the addition of the surname "Posner's" to the fanciful mark "ebonaire" in determining the question of confusing similarity to its own mark, "Debonair," citing Menendez v. Holt, 1888, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526.[5] This decision has not been construed as absolutely prohibiting consideration of a surname on the issue of similarity. Instead, the courts state that it is proper to consider the entire mark, including the surname, but recognize that parts of a mark may be more dominant than others in the sense that they are more likely to remain in the public's mind and are, therefore, entitled to more weight in deciding the likelihood of confusion.

3. 15 U.S.C.A. § 1052(d).

4. Posner's contention, which is not supported by the record (R–16, 20–22), that Fuller does not sell in Negro neighborhoods is subject to this same infirmity.

5. The only question presently before this court is the registrability of the mark "Posner's ebonaire" as shown on the application (R–9). We are not concerned with any variations on that mark. Posner's right to use "ebonaire" alone, as it has done on its labels (R–5), is for another forum to consider at another time. See Smith v. Tobacco By-Products & Chemical Corp., 243 F.2d 188, 190, 44 CCPA 880.

This clearly represents the approach taken in Celanese Corp. of America v. E. I. Du Pont De Nemours & Co., 154 F.2d 143, 33 CCPA 857, on which opposer relies, as is indicated by the following language appearing at page 145 of 154 F.2d, at page 860 of 33 CCPA:

"It is a matter of common knowledge that in the purchase of goods people generally do not stop to scrutinize marks nor retain a vivid recollection of their diversified features. Each of the contested marks, therefore, is to be considered in its entirety and viewed as the general public would view and remember it in making a purchase of the merchandise to which it is attached."

In applying this principle in the Celanese case, this court decided that, "while trade-marks must be considered as a whole in determining the question of similarity, and while the name 'Du Pont' may be more conspicuous in appellee's mark than 'Clar-apel,' nevertheless the public in making purchases of the goods would be likely to remember and use the word 'Clar-apel' as indicating origin of the goods. For that reason, 'Clar-apel' must be regarded as the dominant portion of appellee's mark." [6] We then concluded that "Clar-apel" and "Clarifoil" were so similar that confusion in the mind of the public was likely to result if they were used concurrently in the sale of substantially identical goods.

On several other occasions various courts have disregarded the surname in a trademark because it was determined that the rest of the mark was dominant. See California Prune & Apricot Growers Association v. Dobry Flour Mills, Inc., 101 F.2d 838, 26 CCPA 910; Ambassador East, Inc. v. Orsatti, Inc., 3 Cir., 1958, 257 F.2d 79; Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 2 Cir., 1952, 199 F.2d 602.[7] On the other hand, in a number of instances the surname has been found to be the dominant part of the mark, or at least significant (and perhaps no less dominant than the rest of it), and has, accordingly, been considered by the courts in determining the issue of the likelihood of confusion. Yard-Man, Inc. v. Savage Arms Corp., 220 F. 2d 782, 42 CCPA 862; Best & Co. v. Miller, 2 Cir., 1948, 167 F.2d 374; New Yorker Hotel Corporation v. Pusateri, D.C.W.D.Mo.1949, 87 F.Supp. 294. Thus, it is apparent that a surname can be a significant or co-equal portion of a trademark and must not always be totally disregarded in deciding a question of confusing similarity.

This court is not prepared to say that there is some magic in a fanciful word such as "ebonaire" which causes it to stick in the public's mind any more than "Posner's" or "Posner's ebonaire" under all possible circumstances. Each case must be decided on its own facts. In this case it is noted that, while "ebonaire" is printed in larger letters than "Posner's" in applicant's trademark, the former is written with each letter higher than the preceding one in an ascending manner and is, consequently, difficult to read, whereas the latter is written on a horizontal line and, because it appears first and requires less effort to read, is more likely to come to the purchaser's attention first. Under these circumstances, it would appear that the "Posner's" portion of the mark is at least as likely to remain in the public's mind as "ebonaire." Since the mark must be considered in its entirety, this court has no difficulty in concluding that likelihood of confusion in the mind of the public is remote, although the goods are of similar descriptive qualities. We are reassured in our judgment by the fact that it is in accord with the unanimous decision of the three members of the Trademark Trial and Appeal Board. Cf. Rex Shoe Company v. Juvenile Shoe Corp. of

6. Celanese Corp. of America v. E. I. Du Pont De Nemours & Co., supra.

7. See, also, Frankfort Distilleries, Inc. v. Kasko Distillers Prod. Corp., 111 F.2d 481, 27 CCPA 1189, where the same principle was applied but no surname was involved.

America, 273 F.2d 179, 180, 47 CCPA 750; Montgomery Ward & Co., Inc. v. Sears, Roebuck & Co., 49 F.2d 842, 843, 18 CCPA 1386. The decision of the Trademark Trial and Appeal Board dismissing the opposition is affirmed.

Affirmed.

RICH, Judge (concurring).

I agree with the result reached in Judge VAN DUSEN'S opinion. I also agree with Judge MARTIN'S view that the trademark significance of the mark sought to be registered resides primarily in the word "ebonaire," yet I am without doubt that confusion is not likely to result from the concurrent use of applicant's mark and "Debonair," taking into account, as the statute requires, both the marks and the involved goods.

Particularly in the present case do I feel that the outcome depends on the facts which, as usual, are not "on all fours" with any other case I know of, contrary to opposer's contention.

The factor which chiefly influences me is the *meaning* attributable to the marks. We are not dealing with marks which are "arbitrary" in the sense of not stimulating any ideas at all in the minds of the beholders. "Debonair" is one of the several spellings of a common English word with a French origin and flavor. The portion "ebonaire" of applicant's mark is one of those hybrids which, when contemplated as it would be, in connection with the goods to which it is applied, is clearly calculated to stimulate thoughts. Thus each is pregnant with meaning.

"Debonair" is a word which I think would mean something fairly definite to anyone sufficiently literate to comprehend a movie, and that would include most everyone. It connotes a person who is affable and courteous, graceful and gay. As applied to toiletries it is suggestive of aids to the creation of such a personality.

The portion "ebonaire" applied to applicant's hair pressing cream or hair straightening kits is a sort of anglicized version of the Chinese ideogram. It is inescapable that as used it is a play on the word "ebony," which Negroes have taken to themselves in several connections, and applicant's goods go primarily to the Negro market. The suffix "-aire" is a common one. Why it was used I have no way of knowing but I will assume, arguendo, that it was coupled with "ebon" to suggest the word "debonaire." If that was the purpose, I think there is only a 50% chance the idea would get across because of the many other uses of "-aire." Considering the market for the goods, I believe the predominant impression is bound, in any case, to be *ebony*, with a fancy ending, like those used in the names of cars and real estate developments. Appellant says the mark "suggests a debonaire negro." That is good advocacy, but to the public I think "ebonaire" would suggest, rather, a product *for* negroes. "Debonair" carries no such suggestion.

Let me illustrate my point by expanding the field. Suppose we had the following trademarks: Yvonneaire, Devonair, Ebonaire, and Debonair. While it can be said they all sound somewhat alike and some of them even look alike, each is dominated by or is a name or word which has meaning, conveys an idea, and hence raises associations in the mind of the public. The first suggests a French girl, the second English countryside, the third (when used on a product sold primarily to Negroes) ebony or the Negro race, and the last is simply a word with its own meaning, which is quite different from the meanings suggested by the other three.

It is my opinion that even though purchasers of applicant's products should sense in its mark the suggestion of the common *word* "debonaire," they would not for that reason be confused and think that there was a relationship, with respect to origin, with other toiletries sold under the trademark "Debonair." This is because of the predominant suggestion of "ebony" in applicant's mark and its unique relationship to the products on which it is used. The primary

meanings engendered by perception of applicant's and opposer's marks, according to my view of the matter, are poles apart and I think that is enough to preclude confusion.

For these reasons I agree with the decision to affirm.

MARTIN, Judge, with whom SMITH, Judge, joins (dissenting).

Although applicant's mark includes "Posner's" I believe that the trademark significance to the public would reside in "ebonaire" and there is sufficient similarity between "ebonaire" and "Debonair" to raise some doubt in my mind as to the likelihood of confusion. Therefore, I would *reverse* the decision of the Trademark Trial and Appeal Board.