52 CCPA

J. C. HALL COMPANY, Appellant,

v.

HALLMARK CARDS, INCORPORATED,
Appellee.

Patent Appeal No. 7310.

United States Court of Customs
and Patent Appeals.

Feb. 11, 1965.

Albert H. Kirchner, Washington, D. C., for appellant.

Robert D. Hovey, Kansas City, Mo., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

J. C. Hall Company filed application[1] to register "HALLMARK" for blank checks issued in single and book form, alleging use since April 17, 1933. Registration has been opposed[2] by Hallmark Cards, Incorporated, alleging prior and continuous use of the identical term "HALLMARK" as a trademark for a line of goods, hereinafter to appear. From the decision of the Trademark Trial and Appeal Board sustaining the opposition, J. C. Hall Company prosecutes this appeal.

The material facts found by the board from the record, consisting of testimony taken by both parties, appear to be substantially as follows:

"HALLMARK" was first used by appellee-opposer (hereinafter appellee) in 1923 as a trademark for greeting cards, and since that time it has been used with an expanding line of its goods presently including greeting cards, tallies, place cards, invitations, wrapping paper, tape, seals, notes, writing paper, and the like. Appellee's "HALLMARK" products have been advertised nationwide through magazines, newspapers, radio and television programs, and point-of-sale displays at an annual cost approximating two million dollars. The products are distributed throughout the United States and abroad through approximately twenty-two thousand distributors and dealers, drug, variety, department and book stores, and other related outlets. Approximately fifty million units or packages bearing the mark "HALLMARK" were sold in 1959 and approximately fifty-nine million in 1960. During 1961 appellee produced nearly four and one-half million greeting cards per day. Greeting cards, such as those sold by appellee under its mark, and blank checks issued in single and book form are both sold through office supply and stationery stores.

Appellant's corporate name has been J. C. Hall Company since 1891. Appellant is a bank stationer engaged in manufacturing and selling, under various brand names or marks, printed forms primarily used by banks, including passbooks, letterheads, deposit tickets, ledger statements and a variety of snap-out forms, which are checks, checkbook covers and binders, signature cards, statement of condition folders and other related material. The trademark "HALLMARK" has been used only with checks and checkbooks sold exclusively to banks since 1933. These "HALLMARK" supplies are ordered directly by banks, completed and furnished by appellant as directed and authorized by the ordering bank. The checks are distributed by the bank to customers for their everyday use. The "HALLMARK" checks have been advertised and promoted by the distribution of calendars to banks; by the distribution of catalogs featuring "HALLMARK" checks to banks for their use in advising their customers of the availability of such checks and to allow customers to make their selection of checks; and by mailing pieces furnished banks to be included in bank statements mailed to their accounts. These fliers prominently feature the slogan "WHEN YOU USE HALLMARK YOU ARE USING THE BEST." It should be here noted that appellee has also prominently featured the registered trademark "WHEN YOU CARE ENOUGH TO SEND THE VERY BEST."[3]

Appellant's total sales exceeded a million dollars in 1958 and approximately one and one-half million dollars in 1961, of which 90% was in checks, 30% of this or about three hundred and sixty thousand to four hundred thousand dollars being in checks sold under the mark "HALLMARK."

---

1. Serial No. 90,754, filed February 11, 1960.

2. Opposition No. 40,848, filed April 5, 1961.

3. Reg. No. 674,624, issued February 24, 1959.

The board found no dispute as to appellee's prior rights in "HALLMARK" for greeting cards. Appellant raised the issue that appellee cannot properly rely on its use of "HALLMARK" on any other product since appellee's record, including its registration, is insufficient to establish use of "HALLMARK" for such goods at any time prior to 1933, the date of first use established by appellant. In this connection appellant contends that the registration covering the mark "HALLMARK" for writing paper [4] is without avail to appellee because the assignment purporting to transfer ownership of the registration to appellee is devoid of legal substance. Appellant relies on testimony to the effect that appellee employed an intermediary to obtain the assignment of the registration; that it was assigned to the intermediary who did not receive any records, inventory, customer lists, or anything other than the registration; and that the intermediary, after holding the registration for one day without using the mark covered thereby, assigned same to appellee. The board found that the assignment to appellee's intermediary recites the transfer of all right, title and interest in and to "HALLMARK" and the registration thereof for writing paper, "together with that part of the goodwill of the business thereto pertaining," and held that the document constituted a valid assignment, and that the evidence relied on by appellant was "manifestly insufficient to rebut the prima facie presumptions afforded opposer as the record owner of this registration."

In an alternative approach to this phase of the matter, the board stated: (citations omitted)

"In any event, the fact that opposer's 'HALLMARK' products other than greeting cards may not have been sold until after applicant commenced selling 'HALLMARK' blank checks cannot preclude opposer from relying herein on use of 'HALLMARK' for such goods because opposer's 'HALLMARK' greeting card business was well established prior to the time applicant first started manufacturing and selling 'HALLMARK' blank checks, and invitations, note paper, date books and the other goods to which opposer has subsequently applied the 'HALLMARK' mark are all within the natural realm of expansion of opposer's business; and such goods and greeting cards are products which purchasers generally would expect to emanate from the same producer. To hold otherwise would be to consider the question of likelihood of confusion in a vacuum and overlook the fact that the public has, since 1923, been encountering and purchasing in the same stores and often under the same conditions and circumstances not only 'HALLMARK' greeting cards but a whole line of 'HALLMARK' products produced by opposer."

We find no error in the board's disposition of the issue raised relative to the assignment of the mark "HALLMARK" which issued on an application filed July 20, 1914, for writing paper, nor of its assessment of the rights accruing thereunder to the appellee.

■ A certificate of registration constitutes prima facie evidence of ownership and ownership imparts prima facie evidence of use even though there be no evidence of record relative to such use. The presumption of use emanating from the fact of registration relates back to the filing date of the application on which the registration is predicated. American Throwing Co., Inc. v. Famous Bathrobe Co., Inc., 250 F.2d 377, 45 CCPA 737.

In Gillette Co. v. Kempel, 254 F.2d 402, 45 CCPA 920, it was stated:

"This court has consistently held that ownership of a trademark registration constitutes *prima facie* evidence of ownership and use of the mark. * * *

---

4. Reg. No. 107,653, renewed December 14, 1955.

"The same presumption applies after a registration has been granted and, accordingly, a registration is *prima facie* evidence of continuing use of the registered mark beginning on the filing date of the application on which the registration was granted. * * *

"That the assignee of a registration stands in the place of the registrant in all respects is also clear from section 45 of the Lanham Trade-Mark Act, 15 U.S.C.A. § 1127 which provides that 'The terms "applicant" and "registrant" embrace the legal representatives and successors and assigns of such applicant or registrant.' "

■ It is a matter of no significant import with reference to its impingement upon the validity of the assignment and the rights accruing to appellee thereunder that the assignment was accomplished through an intermediary or that no tangible assets were transferred thereunder nor that the assignor held the mark only one day prior to assigning same to appellee. Black Panther Co., Inc. v. Cook Chemical Co., 277 F.2d 177, 47 CCPA 890; Hy-Cross Hatchery, Inc. v. Osborne, 303 F.2d 947, 49 CCPA 1163.

We must therefore conclude that appellee is the prior user of the mark "HALLMARK" for both greeting cards and writing paper.

We agree with the board that the only question of substance herein is whether or not persons familiar with appellee's use of "HALLMARK" will mistakenly assume that "HALLMARK" blank checks also originate with appellee.

■ The board found that these prior rights of appellee were sufficient to support a holding of likelihood of confusion; however, it laid stress on the other goods, in connection with which appellee subsequently used the trademark "HALLMARK," pointing out that they were of such a nature that purchasers would generally expect them to emanate from the same source. Consequently they were embraced within the natural realm of expansion of appellee's business. The rationale thus employed by the board finds support in the reasoning of this court in Kautenberg Co. v. Ekco Products Co., 251 F.2d 628, 45 CCPA 761:

"It is in the area of noncompeting goods that the often discussed concept of the 'natural expansion of business' arises * * *. This concept has been said to have two aspects: (1) the possibility that the trade practices of the second user may stain the owner's reputation in the minds of his customers; and (2) the possibility that at some time in the future he may wish to extend his business into that market which the second user has begun to exploit. See S. C. Johnson & Son, Inc. v. Johnson, 2 Cir., 1949, 175 F.2d 176, 179, 180. The first aspect, which represents merely another facet of the subject of confusion-in-trade, is the one with which we are here concerned. The confusion involved, of course, is not a confusion of goods but a confusion of business; the deceived customer here buys one party's product in the belief that it originates with the other party or that it is in some way affiliated with the other party's business. * * * He does this reasonably thinking that the one party has expanded his business into the field covered by the other party's mark. The question, in the last analysis, is no different from that presented by the ordinary case involving competing goods: is the public likely to be confused as to the origin of the goods by the concurrent use of the two marks involved?"

See also Motorola, Inc. v. Griffiths Electronics, Inc., 317 F.2d 397, 50 CCPA 1518.

■ Appellant relies heavily on the fact that its goods are sold directly and only to banks and not to the general public. The record, however, supports the conclusion that it is customary for office supply and stationery stores to stock, dis-

play and sell items such as blank checks and greeting cards. The products of the parties are fully capable of being dispensed to the public through the same channels of trade. As far as the bank is concerned, the utility of the checks and checkbooks supplied by appellant is in their dissemination to and use by the customers of the bank who may well constitute a sizable segment of the general public. A blank check in the hands of the bank customer is translated into a negotiable instrument and thus becomes a courier in the marts of trade. A single check may come into the ownership of a plurality of holders in due course before its ultimate presentation for cancellation to the depository on which it is drawn. The record supports the conclusion that, in the final analysis, the "HALLMARK" products are promoted and sold to the same ultimate consumers.

■ It is pertinent to note that the goods identified in appellant's application are not restricted to any particular channel of distribution. Present sales and methods of distribution are not conclusive and do not, in our judgment, form a proper basis for finding lack of likelihood of confusion or mistake when the identical trademarks are used on the respective goods of the parties. Meyer Chemical Co. v. Anahist Co., Inc., 263 F.2d 344, 46 CCPA 784; Daggett & Ramsdell, Inc. v. I. Posner, Inc., 277 F.2d 952, 47 CCPA 952.

■ Appellant urges that the long concurrent use of the marks by the parties, without proof of actual confusion, supports a conclusion of no likelihood of confusion. The ultimate consideration, however, is likelihood of confusion. Absence of proof of actual confusion is of minor relevancy in the resolution of the issue.

Appellant introduced sixty-eight registrations issued to others for trademarks consisting of or comprising the mark "HALLMARK" for a wide diversity of goods including merchandise marketed through the same channels of trade as appellee's "HALLMARK" products. The record supports the finding of the board that only one of the third-party registrations pertains to goods of the character sold by the parties herein and that had expired many years ago.

■ Aside from the fact that these third-party registrations apply to different products than those here involved, they are not of material significance in the determination of the issue here presented. As this court said in In re Helene Curtis Industries, Inc., 305 F.2d 492, 49 CCPA 1367:

> "We will not assume any knowledge on the part of the purchasing public of mere registrations in the Patent Office and neither will we assume that marks are in continuing use, so as to have had any effect on the mind of the purchasing public, merely because they had been registered. As the statute requires us to do, we will determine the issue on the basis of the mark sought to be registered, the goods named in the application, and the prior mark and the goods on which it is used or for which it is registered."

■ In consideration of the record before us and the arguments of counsel, we find ourselves in agreement with the conclusion of the board that:

> "* * * it is noteworthy that apart from the years 1958 and 1961, there is no evidence either oral or documentary which would indicate the nature of applicant's use, promotion or business in 'HALLMARK' blank checks over the many years of its alleged use thereof. Contrasting this with opposer's prior and extensive use of 'HALLMARK' and its large investment in the reputation and goodwill appurtenant thereto, we feel that the equities in this proceeding fall on opposer's side and any doubt herein must therefore be resolved in its favor."

The decision of the board sustaining the opposition is affirmed.

Affirmed.