**DAVIDOFF EXTENSION S.A., a Swiss corporation, Plaintiff,**

v.

**DAVIDOFF INTERNATIONAL, INC., a Florida corporation, and Stewart S. Hoffman, Defendants.**

**Civ. A. No. 83–1435–CIV–KING.**

United States District Court, S.D. Florida, Miami Division.

Nov. 30, 1984.

tiff's order to show cause for preliminary injunction. At that hearing both defendants were represented by counsel, and plaintiff offered the testimony of Georges Schelker its sales manager and proffered its Exhibits. The matter was continued to take the testimony by way of deposition of defendant Stewart S. Hoffman on August 23, 1983. Thereafter the parties by counsel and by all the evidence adduced in the case thus far were heard in open court on August 31, 1983. The Court having heard the testimony of plaintiff's witness, seen its Exhibits, and having reviewed the pleadings and evidence submitted by the defendants, the defendants having not offered the testimony of Stewart S. Hoffman taken August 23, 1983 but the plaintiff having made it a matter of record, and this Court having been otherwise advised fully on the applicable law and a previous case in this Court captioned Davidoff Extension S.A. v. Davidoff Comercio Industria Ltda., et al (83–0649–Civ–JLK), where this Court entered an injunction and judgment by default against the defendant therein and in favor of Davidoff Extension, S.A., temporarily enjoined the defendants in this case from using the name Davidoff in connection with the sale of any tobacco related products. On October 3, 1984 trial was held. Plaintiffs presented Mr. Thomas Bensen, their exclusive United States distributor who testified as to the ongoing and escalating sales of Davidoff products in the United States. He was examined as an adverse witness by defendants primarily as to the Davidoff "Cuban connection."

Based upon the entire record in these proceedings and pursuant to Rules 52(a) and 65 FRCP the findings of fact and conclusions of law of this Court are:

*Findings of Fact*

1. Plaintiff, Davidoff Extension, S.A., a Swiss corporation, and its related companies including Oettinger Imex AG, is a well-known international marketer of tobacco products and has registered its trademark "Davidoff" with the United States

Jack E. Dominik, Jack E. Dominik, P.A., Miami, Fla., for plaintiff.

Stewart S. Hoffman, Davidoff Intern. Inc., U.S.A., Tamarac, Fla., for defendants.

### ORDER AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES LAWRENCE KING, Chief Judge.

This matter came on before the Court initially on August 17, 1983 on the plain-

Patent and Trademark Office, Reg. Nos. 1,052,564 (PX A) and 1,058,684 (PX B). The trademark is used only on more expensive tobacco products, and plaintiff anticipated sales of trademarked tobacco products in the United States this year of approximately $800,000 (Aug. 17 Tr. 20). This estimate was confirmed as met by Mr. Bensen during his testimony on October 3, 1984 (Oct. 3, Tr. 17). Plaintiff's sales internationally of Davidoff tobacco products exceed one-hundred million dollars per year (PX C and D). The first sale (PX L) to plaintiff's distributor, Bensen International, to fill the pipeline in anticipation of a nine city promotion by Zino Davidoff and the Baroness Rothschild (PX M, Aug. 17 Tr. 12–13) was admitted by defendant Hoffman to amount to approximately $500,000 (Hoffman dep. pp. 83–85).

2. Plaintiff, through its exclusive importer, George Bensen & Son, Incorporated, enjoyed gross sales of Davidoff products in the United States in 1983 of between $300,000 to $400,000 (Oct. 3, Tr. 17). Further, an approximation at gross sales for the year of 1984 will show a steady increase up to $500,000 (Oct. 3, Tr. 17). Tom Bensen, president of George Bensen & Son, Incorporated, testified that the prestige of handling the Davidoff line has been very important to his company (Oct. 3, Tr. 24–25). He also testified as to inventory shortages of Davidoff cigars following many of the promotions in the United States (Oct. 3, Tr. 20).

3. Zino Davidoff, son of the founder of the original Davidoff store in 1907 and in joint promotion with the Baroness Rothschild of Davidoff cigars and Rothschild wines, has had interviews, television talk shows, and other publicity releases in nine major United States cities during the month of October 1983 (Oct. 3, Tr. 18–19). The dates and scheduling was offered in evidence by plaintiff through Georges Schelker (PX M, Aug. 17 Tr. 12–13), on the letterhead of John R. Walsh Associates of New York. This and a second tour in 1984 was confirmed by Mr. Bensen (Oct. 3, Tr. 20–21). Zino Davidoff is a worldwide known personality in the tobacco industry and has achieved extensive press media (EX R Oct. 3, Tr. 11) coverage and also published a book on cigars (PX E).

4. Individual defendant Stewart S. Hoffman was employed by Consolidated Cigar for approximately thirteen years; and then by Nicaraguan Cigar Company as national sales manager for a period of about three years. During the Nicaraguan revolution he returned to the United States to form Hoffman Cigar Company in about 1980 (Hoffman dep. pp. 7–8). Hoffman admitted knowing of the Davidoff cigars for many years (Hoffman deposition, p. 3). Hoffman went to visit plaintiff Davidoff's store in Toronto and spoke there with its manager, a Mr. Hines (Hoffman dep. p. 35). Although Stewart Hoffman had never been in Europe, he was well aware of the Davidoff brand name, knew of Zino Davidoff's book, and was of the opinion that the Davidoff cigars are the most expensive cigars in the world but not necessarily the best (Hoffman Dep. pp. 30, 41–42).

5. Only after visiting plaintiff's Davidoff store in Toronto did Stewart S. Hoffman form defendant Davidoff International, Inc. on December 2, 1982. He thereafter waited until January 3, 1983 to first contact "Davidoff International" in Europe. He used the letterhead of "Hoffman Tobacco Ltd." (PX H). Plaintiff Davidoff of Europe had no interest in doing business with Mr. Hoffman (PX H). Hoffman stated that his purpose for adopting the name was to protect it while doing business with the plaintiff (Hoffman deposition p. 34). Hoffman further stated that his name "Hoffman" was dead in the industry and could not support him (Hoffman pp. 110, 111).

6. Sometime in the Spring of 1983 Hoffman worked with Smoke Shop Magazine, and previously an advertising agency, to prepare a one page ad for "generic cigars" using the Davidoff name as well as Davidoff's distinctive stylized script form of the name on the advertising (PX G). Immediately upon learning of this advertising, plaintiff's Telex was sent to Mr. Hoffman

to cease and desist using the name "Davidoff" (PX H).

7. At all of the hearings and in all of the pleadings the defendants failed to present any proof as to why Stewart S. Hoffman or Davidoff International, Inc., his Florida corporation, had any rights in the name "Davidoff". Various defenses were offered indicating that there were two or three foreign contests over the right to the name Davidoff, but plaintiff offered Exhibit P setting forth its numerous registrations of the mark Davidoff including in its country of origin, Switzerland. Plaintiff further represents in Exhibit P that over seven hundred applications to register the related Davidoff marks have been filed throughout the world. One newspaper article offered by the defendant (DX, Aug. 31 Tr. 19-20), quoted the Cuban Government as claiming to have some right in the mark Davidoff, but even then it asserted that the Cuban Government was paying a royalty to the Davidoff people for using the mark. This fact was not denied at trial, and along with other exhibits, undermines the defenses to the effect that the mark Davidoff is controlled by the Cuban Government.

8. The testimony submitted of Dr. J. David Meisser (Meisser 87–89), the plaintiff's corporate trademark counsel, established the fact that Cubatabaco disclaims any proprietary rights in the trademark "Davidoff". This was documented and legalized and admitted in evidence with Dr. Meisser's deposition.

9. Defendant alleges that the Davidoff cigars coming into the United States contain Cuban tobacco, and that this importation is a violation of certain laws. Mr. Bensen, the plaintiff's exclusive United States distributor, said that this could not occur. He explained that the cigars coming into the United States are imported from Honduras, and a certificate of origin on a Form A is required. Because Honduras enjoys a "favored-nation" status, the cigars come in duty-free. All of the invoices are marked "These tobaccos contain no Cuban tobaccos of any origin" and this also

appears on the boxes. Mr. Bensen was of the opinion that neither the manufacturers in Honduras or Davidoff Extension S.A. in Switzerland would jeopardize the relationship between themselves and the United States Customs Service by utilizing any amount of Cuban tobacco (Oct. 3, Tr. 23–24). On cross-examination Mr. Bensen also explained that if Davidoff Havana Cuban cigars are being sold in the United States they are being sold in direct violation of his agreement with the plaintiff (Oct. 3, Tr. 34). If any Davidoff Cuban tobacco cigars are coming into the United States, they may be coming in through the mails from individuals, but without any sponsorship of the plaintiff (Oct. 3, Tr. 35).

10. The most that defendants offered as to the establishment of their business were sales of approximately $1,000 per month (Hoffman p. 58) and that the advertising altogether represented an investment of $2,000 (Hoffman p. 58). The plaintiff's background advertising and volume as noted by all the Exhibits as well as the scheduled promotional tours vastly outweigh any investment defendants have in the name Davidoff.

11. Defendants' infringement was deliberate, willful, and fraudulent and in full knowledge of plaintiff's prior use and reputation. In addition to the utilization of the name "Davidoff" defendants have used the same stylization and script.

12. Where any finding of fact, in whole or in part, can be deemed a conclusion of law it shall. Where any conclusion of law, in whole or in part can be deemed a finding of fact, it shall.

*Conclusions of Law*

I. Plaintiff's trademark registrations 1,052,564 (PX A) and 1,058,684 (PX B) are valid.

II. It has been established that the burden of proof required to cancel a registered trademark based upon "unlawful use" is that of a clear and convincing nature. *Satinine Societa in Nome Collettivo di S.A. e.m. Usellini v. P.A.B. Pro-*

**8**

*duits et Appareils de Beaute*, 209 USPQ 958 (TTAB 1981). No direct evidence was submitted by the defendants that plaintiff was shipping cigars containing Cuban tobacco into the United States. Mr. Bensen, plaintiff's exclusive distributor in the United States, further rebutted this inference in detail by explaining that the favored nation status of duty-free cigars would be lost if the Davidoff cigars were not pure Honduran cigars and submitted pursuant to the appropriate certification. In addition, he stated it would violate his exclusive agreement. He did concede, however, that others not under control of any of the parties here, could send individual boxes of Cuban cigars into the United States. Such activity, if it exists, does not affect the plaintiff in this action or the plaintiff's rights. Therefore, the defendants have not met this burden of clear and convincing proof.

 III. The existence of a corporate charter with the name Davidoff is no defense since under Florida law as set forth in *Shatterproof Glass Corp. v. Buckmaster*, 256 So.2d 531 (Fla. 2nd DCA 1972), it was held:

"... if the domestic corporation adopts and uses a name with a fraudulent purpose or with actual knowledge of the existence of the name being used by a foreign corporation, even though the foreign corporation is not qualified to do business in the state, an injunction will issue to restrain the domestic corporation from using the name."

Thus there can be no question under *Shatterproof* that a permanent injunction should issue since Stewart S. Hoffman admitted knowing of the Davidoff name prior to forming defendant Davidoff International, Inc., and indeed confessed it in the correspondence introduced in evidence in this case as Exhibit H.

IV. Defendants urge that plaintiff has not used its name or its products in the United States, and that the products cannot be purchased. This is inconsistent with the testimony of plaintiff's sales manager Georges S. Schelker and certainly rebutted by the $500,000 order from Bensen for the October 1983 promotion held in nine cities and outlined in plaintiff's Exhibit M. Further, plaintiff is a Swiss corporation. It has registered the Trademark Davidoff in Switzerland (PX P). The United States and Switzerland are both members of the International Convention for the Protection of Industrial Property (Paris Union); see, Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 99.1(a) and App. XX (3d Ed.1982 Supp.) for a list of the member countries and the text of the treaty (Paris Convention) creating the Paris Union. The Paris Convention is self-executing and, by virtue of Article VI of the U.S. Constitution, a part of the law to be enforced by the courts; *Vanity Fair Mills, Inc. v. T. Eaton Co. Ltd.*, 234 F.2d 633, 109 USPQ 438 (2d Cir.1956), cert. denied 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). Also, Lanham Act § 44 (15 U.S.C. § 1126) explicitly implements the Paris Convention together with other conventions or treaties relating to trademarks, trade names, or unfair competition; § 44(b) (15 U.S.C. § 1126(b)); *SCM Corp. v. Langis Foods Ltd.*, 539 F.2d 196, 190 USPQ 288 (D.C.Cir. 1976); *L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.*, 214 F.2d 649, 102 USPQ 94 (3d Cir.1954). The provisions of the Paris Convention and Lanham Act § 44 most pertinent to the present case appear to be the following three benefits conferred on plaintiff:

(1) Plaintiff may obtain a U.S. Trademark Registration of its trademark "Davidoff" for tobacco products, smokers' articles, etc. without alleging use of its trademark in the United States because plaintiff has a Swiss Trademark Registration for its trademark: Lanham Act § 44(c), (e) (15 U.S.C. § 1126(c), (e)); Paris Convention Article 6 quinquies; Callmann § 99.-2(e)(1);

(2) Plaintiff's trade name is to be protected without the obligation of any filing or registration: Lanham Act § 44(g) (15 U.S.C. § 1126(g)); Paris Convention Article 8; Callman § 99.-2(e)(7); and

(3) Plaintiff is to be protected from unfair competition: Lanham Act § 44(h) (15 U.S.C. § 1126(h)); Paris Convention Article 10bis; Callman § 99.2(b).

In particular, Article 10 bis of the Paris Convention provides:

"(1) The countries of the Union are bound to assure to nationals of such countries effective protection against unfair competition.

(2) Any act of competition contrary to honest practices in industrial or commercial matters constitutes an act of unfair competition.

(3) The following in particular shall be prohibited:

1. all acts of such a nature as to create confusion by any means whatever with the establishment, the goods, or the industrial or commercial activities, of a competitor;

2. false allegations in the course of trade of such a nature as to discredit the establishment, the goods, or the industrial or commercial activities, of a competitor;

3. indications or allegations the use of which in the course of trade is liable to mislead the public as to the nature, the manufacturing process, the characteristics, the suitability for their purpose, or the quantity, of the goods."

As consequence, defendants' argument that plaintiff is not using its trademark in the United States and that its U.S. Registrations of the trademark were fraudulent appears inconsequential.

■ V. That defendants, in addition to infringing plaintiff's trademark pursuant to 15 U.S.C. § 1117, have also violated 15 U.S.C. § 1125(a) in that using the name "Davidoff" on generic cigars by defendants implies that the cigars were supplied by the plaintiff, when they were not. This thus imputes a false designation of origin of the cigars.

■ VI. That defendants actions of deliberate, intentional, willful, and fraudulent infringement entitled plaintiff to award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117. Defendant Hoffman had actual knowledge of the Davidoff cigar name and reputation and had actually visited a Davidoff store in Toronto, Canada prior to appropriating the name for incorporation in the State of Florida, and utilizing the stylized script to advertise and sell cigars. The Lanham Act 15 U.S.C. § 1117 as amended sets forth the monetary remedies available to a successful plaintiff: "The Court in exceptional cases may award reasonable attorney's fees to a prevailing party." This provision was amended in 1975 to close a gap in protection afforded to the trademark owner.

"In suits brought primarily to obtain an injunction, attorneys' fees may be more important than treble damages. Frequently, in a flagrant infringement where the infringement action is brought promptly, the measurable damages are nominal. Section 35, as proposed to be amended, makes clear that a court has discretion as to whether award trebled damages, attorneys' fees, or both, or neither."

H.R.Rep. No. 93–524, 93rd Cong., First Sess., 5–6 (1972). The term "exceptional" was defined as "cases where the acts of infringement can be characterized as 'malicious', 'fraudulent', 'deliberate' or 'willful'." Id. It has been consistently held, both in the courts of this circuit and elsewhere, that cases of trademark counterfeiting fall within the "exceptional" category, thus subjecting the defendants to an award of attorneys' fees. *Playboy Enterprises, Inc. v. P.K. Sorren Export Co. of Florida*, 546 F.Supp. 987 (S.D.Fla.1982); *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272 (9th Cir.1982). In the present case, it is submitted that the evidence is sufficient to find defendants herein liable for such attorneys' fees.

THEREFORE, IT IS HEREBY ordered and adjudged, based upon the above findings of fact and applicable law pursuant to Rule 52(a) FRCP that, pursuant to Rule 58(2) FRCP and Rule 65 FRCP the preliminary injunction in favor of the plaintiff issued against both defendants Davidoff International, Inc., a Florida corporation

and an individual defendant Stewart S. Hoffman be made permanent as follows:

A. that defendants Davidoff International, Inc. and Stewart S. Hoffman, jointly and severally, and all their successors, assigns, affiliates, agents, servants, employees, and representatives, and all persons, firms, and corporations in active concert with these defendants, or either of them, who receive notice hereof, be and hereby are enjoined and restrained:

(a) from directly or indirectly using the name "Davidoff" or any similar name in connection with any commerce in the United States including, but not limited to, tobacco or smokers' products, whether by use as a business name, trademark, service mark, or any other designation;

(b) from engaging in any other conduct that tends to falsely represent that, or is likely to confuse, mislead and deceive purchasers, defendants' customers or members of the public into believing that, tobacco products of defendant originate from plaintiff or that defendants or defendants' products have been sponsored, approved or licensed by plaintiff or are in some way affiliated or connected with plaintiff or plaintiff's products in any way whatsoever.

B. That plaintiff be repaid its Bond with the Clerk of this Court in the amount of $1,000.

C. Defendants Davidoff International, Inc. and Stewart S. Hoffman are directed to change the corporate name of defendant Davidoff International, Inc. to a name not confusingly similar to Davidoff within thirty (30) days.

D. Plaintiffs shall submit an affidavit of actual attorney's fees and expenses for this Court's review awarding reasonable attorney's fees, costs, and expenses pursuant to 15 U.S.C. § 1117.

E. This Court shall retain continuing jurisdiction over the parties and subject matter for further implementation of this order.