**JAGUAR CARS LIMITED and Jaguar Cars, Inc., Plaintiffs,**

v.

**Maurice SKANDRANI, Defendant.**

**No. 89–6787–CIV.**

United States District Court, S.D. Florida.

Jan. 10, 1991.

**1180**

Sandra Edelman, Townley & Updike, New York City and Robert McIntosh of Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., for plaintiffs.

Maurice Skandrani, defendant pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ZLOCH, District Judge.

THIS CAUSE has come before the Court upon a non-jury trial commencing Thursday, November 15, 1990. The Court hereby makes the following findings of fact and conclusions of law after a one-day bench trial.

### FINDINGS OF FACT

1. Jurisdiction is conferred on this Court by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 and the doctrine of pendent jurisdiction.

2. Plaintiff, Jaguar Cars Limited ("Jaguar (U.K.)"), is a corporation organized and existing under the laws of the United Kingdom with its principal place of business in Allesley, Coventry, England.

3. Plaintiff, Jaguar Cars, Inc. ("Jaguar (U.S.)"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 555 MacArthur Boulevard, Mahwah, New Jersey.

4. Defendant, Maurice Skandrani ("Skandrani"), d/b/a Limor Alexander, conducts business at 7360 West 20th Avenue, # 130, Hialeah, Florida 33016.

5. Plaintiff, Jaguar (U.S.), is the United States member of the Jaguar Group, affiliated corporations owned by Jaguar plc in the United Kingdom that (a) manufacture and sell Jaguar automobiles, spare parts, automotive equipment, accessories, and (b) sell and license for sale a wide variety of personal consumer products under the JAGUAR Trademarks.

6. The principal function of Jaguar (U.S.) is to advertise, promote, market and sell products under the JAGUAR Trademarks in the United States.

7. The JAGUAR Trademarks include: (a) the JAGUAR mark, registered on September 17, 1946 in the United States Patent and Trademark Office for automotive vehicles and parts under Reg. No. 423,961; (b) the "Leaping Jaguar" design mark, registered on June 17, 1969 in the United States Patent and Trademark Office for motor cars under Reg. No. 871; and (c) Plaintiff's principal trademark and service mark, the composite "JAGUAR–Leaping Jaguar" design mark composed of the trademark JAGUAR with the "Leaping Jaguar" trademark above it, registered on October 24, 1989 in the United States Patent and Trademark Office for automobiles and parts under Reg. No. 1,562,075.

8. On March 27, 1989, Jaguar (U.K.) file an application, Serial No. 789,450, to register the "JAGUAR–Leaping Jaguar" trademark for automotive services. This mark has passed to publication in the United States Patent and Trademark Office.

9. On January 12, 1990, Jaguar (U.K.) filed an application to register the "JAGUAR–Leaping Jaguar" mark, App. No. 018,611, for fragrances, namely cologne.

10. In January 1990, Jaguar filed several other applications in the United States

Patent and Trademark Office for the "JAGUAR–Leaping Jaguar" mark for a wide variety of products, including automobile polish (App. No. 018,609), metal key rings (App. No. 018,610), sunglasses, alarm sysems and cellular telephones (App. No. 108,617), jewelry (App. No. 018,615), and duffel bags, passport cases, umbrellas and luggage tags (App. No. 018,614).

11. The "JAGUAR–Leaping Jaguar" trademark has served as the corporate logo of Jaguar (U.S.) and Jaguar (U.K.) for over eight years.

12. The JAGUAR Trademarks are owned by Jaguar (U.K.) and licensed in the United States for the use of Jaguar (U.S.) and its authorized dealers.

13. Jaguar has sold automobiles bearing the JAGUAR Trademark in the United States since at least as early as 1935.

14. Jaguar (U.S.) currently sells seven Jaguar models in the United States. The United States is the largest single market for Jaguar vehicles. Jaguar's sales at retail in this country have increased from approximately 3,000 units in 1980 to over 18,000 units in 1989.

15. Jaguar (U.S.) engages in extensive advertising and promotion of products bearing the JAGUAR Trademarks.

16. The JAGUAR Trademarks are prominently displayed in Jaguar's advertising and promotional material.

17. Jaguar (U.S.) advertises its line of products in national print, radio and television media, cooperative and major market advertising programs.

18. Jaguar (U.S.) advertises its JAGUAR products in such nationally distributed newspapers and magazines as *The Wall Street Journal, USA Today, The New Yorker, Forbes, Business Week, Fortune, Town and Country, The Economist, Travel and Leisure,* and in specialty magazines such as *Car and Driver, Sports Illustrated* and *Road & Track.*

19. The Jaguar name is also brought to the public's attention through a competitive motor racing program in which Plaintiffs participate in the United States.

20. The renown of the Jaguar name is further illustrated by the existence of Jaguar owners' clubs across the country. These clubs, established by Jaguar owners and/or aficionados, have existed for decades. Club members swap product information, hold rallies and publish a magazine called the *Jaguar Journal.*

21. As a result of Plaintiffs' extensive advertising, promotion and distribution of Jaguar vehicles and related goods and services, and because of the high quality of Jaguar vehicles and related goods and services, the JAGUAR Trademarks have become well-known symbols identified by the public exclusively with Plaintiffs.

22. In the early 1980's, Jaguar (U.K.) decided to expand its use of the JAGUAR Trademarks to consumer products other than motor cars and motor products.

23. Jaguar's decision to expand its business to non-automotive products was consistent with prevalent marketing trends which applied designer and other famous "status" brand names to a wide variety of consumer products.

24. Jaguar (U.K.) is the owner of the Registration No. 1,166,342, issued by the United States Patent and Trademark Office in 1980 for the mark JAGUAR for sunglasses.

25. Jaguar (U.K.) has licensed the use of the JAGUAR and the "JAGUAR–Leaping Jaguar" trademarks for the sale and promotion of sunglasses in the United States. These sunglasses are sold in retail outlets, including drug stores.

26. In June 1986, Jaguar (U.K.) created a wholly-owned subsidiary company, The Jaguar Collection Limited ("Jaguar Collection"). The Jaguar Collection has sold, either directly or through licensees, a wide range of consumer products bearing the JAGUAR Trademarks, including sunglasses and optical frames, sports clothing and equipment, high quality men's wear and clothing accessories, watches, clocks and leather goods.

27. Jaguar (U.S.) and its predecessors have sold and distributed an extensive line of non-automotive merchandise bearing the JAGUAR Trademarks through its authorized dealer network including such items

as pen and pencil sets, ash trays, coffee mugs, umbrellas, small leather goods and luggage, cufflinks, tie tacks, belt buckles, money clips, key chains and women's jewelry as well as a number of styles of jackets, ties, sweaters and shirts.

28. Jaguar (U.S.)'s accessory and clothing items have been sold and distributed under the JAGUAR Trademarks prior to Defendant's adoption of its "Jaguar" and "Lady Jaguar" marks for fragrance products.

29. Jaguar (U.K.) and/or the Jaguar Collection own trademark registrations in many countries for a wide range of non-automotive products.

30. Commencing in 1987, Jaguar Deutschland, Gmb H, an associate company of Jaguar (U.K.), sold Jaguar men's fragrance products in West Germany.

31. After successful sales of the fragrance in West Germany and the formation of the Jaguar Collection, Jaguar (U.K.) and the Jaguar Collection began plans to expand the sales of Jaguar men's fragrance products.

32. On March 1, 1988, Jaguar (U.K.) licensed FGG Fragrances (International) Ltd., now known as Jaguar Fragrances, Ltd., to sell the JAGUAR Trademarks on pefumes, toiletries and cosmetics, including cologne.

33. In June 1988, Jaguar Fragrances Ltd. introduced "JAGUAR For Men" After Shave, Eau de Toilette, Bath & Shower Gel and Soap in Europe.

34. Jaguar Fragrances Ltd. has actively advertised and promoted Jaguar fragrance products in the United Kingdom, Switzerland, West Germany and Austria.

35. Commencing in the summer of 1989, Jaguar Fragrances Ltd., through its United States licensee, Alfin, Inc., began promoting and selling a line of Jaguar men's fragrances in the United States.

36. Through Alfin, Plaintiffs sell "JAGUAR For Men" Eau de Toilette, After Shave, Bath & Shower Gel and Soap in the United States.

37. The packages in which Plaintiffs' "JAGUAR For Men" fragrance products are marketed, both in Europe and the United States, prominently feature a composite "JAGUAR–Leaping Jaguar" trademark.

38. Plaintiffs' Jaguar fragrances are sold nationwide.

39. Plaintiffs currently sell "JAGUAR For Men" fragrance products to stores such as Bloomingdales, Dayton Hudson, Elden Beermans, Broadway, Boscous and Marshall Fields and to military bases throughout the country.

40. Plaintiffs have advertised, promoted and sold the "JAGUAR For Men" line on a nationwide basis.

41. Defendant commenced and continued distribution and sale of his "Jaguar" and "Lady Jaguar" fragrances in 1987 without Plaintiffs' consent.

42. Defendant is not affiliated with Plaintiffs nor is he authorized or licensed by them to use the JAGUAR Trademarks.

43. Defendant filed a trademark application on June 15, 1989 in the United States Patent and Trademark Office for the mark "Jaguar" for perfume, alleging a first use date in interstate commerce of December 1986. Plaintiffs have filed a Notice of Opposition to this application and the opposition proceeding is presently pending.

44. Plaintiffs do not currently own a registration in the United States Patent and Trademark Office for the mark JAGUAR for fragrance products.

45. Defendant is the owner of a Florida state registration for the trademark Jaguar in Class 3, Registration No. TO8295, issued December 8, 1987.

46. The packaging for Defendant's "Jaguar" and "Lady Jaguar" fragrances prominently features the trademark "Jaguar" in close proximity to a "leaping jaguar" symbol.

47. The Defendant's use of the JAGUAR Trademarks or imitations thereof in connection with fragrance products is likely to confuse and deceive consumers into believing that Defendant is affiliated with Plaintiffs and/or that Defendant's products are authorized, licensed, sponsored or approved by Plaintiffs.

48. Defendant's use of the JAGUAR trademarks on fragrance products constitutes a false designation of origin and false description and representation.

49. Defendant's use of the JAGUAR Trademarks or imitations thereof on and in connection with fragrance products is likely to dilute the distinctive quality of the JAGUAR Trademarks and to erode the heretofore strong and exclusive public identification of the JAGUAR Trademarks.

50. Defendant's use of the Jaguar mark and logo, although misguided was not intentional, deliberate or willful. This Court finds that Defendant's testimony that he did not intend to associate his product with Plaintiffs' trademark and logo when he introduced his fragrance line is credible.

Any Finding of Fact which may be deemed a conclusion of law is hereby incorporated into the Conclusions of Law below, and to any Conclusion of Law which may be deemed a Finding of Fact is hereby incorporated into the Findings of Fact above.

## CONCLUSIONS OF LAW

1. This action arises under the Lanham Act, 15 U.S.C. § 1051, et seq., and this Court has jurisdiction over the subject matter and the parties herein under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and (b) and the doctrine of pendent jurisdiction.

2. Pursuant to 15 U.S.C. § 1116, this Court has "the power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable to prevent the violation of any right or the registrant of a mark registered in the Patent and Trademark Office."

■ 3. Plaintiffs' JAGUAR Trademarks are registered on the principal register of the United States Patent and Trademark Office. Federal registration is *prima facie* evidence of the registrant's ownership and exclusive right to use the mark. 15 U.S.C. § 1057(b); *J.C. Hall v. Hallmark Cards, Inc.*, 340 F.2d 960, 962, 52 CCPA 981 (1965) (citing *American Throwing Co., Inc. v. Famous Bathrobe Co., Inc.*, 250 F.2d 377, 45 CCPA 737 (1957).

■ 4. The Defendant is liable for infringement under the Lanham Act, Section 32(1)(a), 15 U.S.C. § 1114(1) and for false designation of origin and false descriptions under Section 43(a), 15 U.S.C. § 1125(a), if his use of the JAGUAR mark is likely to confuse the public into believing that Defendant's products are somehow associated with Plaintiffs or that Plaintiffs have sponsored, licensed or consented to the manufacture and sale of Defendant's products. 15 U.S.C. § 1114(1); *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512, 1513 (11th Cir.1984).

■ 5. In determining whether there is a likelihood of confusion, a number of factors are taken into account including (1) the type of Plaintiffs' mark; (2) the Defendant's intent; (3) the similarity of design; (4) the similarity of products; (5) the identity of retail outlets and purchasers; (6) the similarity of advertising media used; and (7) actual confusion. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir.1983); *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 (11th Cir.1983).

■ 6. Application of these elements to the facts of this case compels the conclusion that Defendant's sale of "Jaguar" and "Lady Jaguar" fragrance products is likely to confuse the public into believing that Defendant's products are somehow associated with Plaintiffs or that Plaintiffs have sponsored, licensed or consented to the manufacture and sale of Defendant's products.

7. Since the introduction of Plaintiffs' Jaguar Cars in this country over 50 years ago, the JAGUAR mark has become a highly recognized brand name in the world. Consumers are exposed to a barrage of print, radio and television advertising for Jaguar products, which constantly reinforces consumer recognition of Plaintiffs as the exclusive source of Jaguar products.

■ 8. Because the Jaguar mark is so strong, it must be provided the widest protection available. The stronger the mark, the more protection it is afforded because of the likelihood of confusion. *John H. Harland Co.*, 711 F.2d at 973. As set

forth in *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987):

> [T]he law today rewards a famous or well known mark with a larger cloak of protection than in the case of a lesser known mark because of the tendency of the consuming public to associate a relatively unknown mark with one to which they have long been exposed if the [relatively unknown] mark bears any resemblance thereto.

*Id.* at 258 (quoting *R.J. Reynolds Tobacco Co. v. R. Seelig v. Hille*, 201 U.S.P.Q. 856, 860 (T.M.T.A.B.1978).

9. The likelihood of confusion is also indicated by the similarity of the Plaintiffs' marks with the marks used by the Defendant for the "Jaguar" and "Lady Jaguar" colognes. The Defendant's composite logo creates an overall appearance somewhat similar to the Plaintiffs' composite mark. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d at 975.

10. The next factor to be considered, the similarity of products, also leads to a finding of a likelihood of confusion. Consumers who see Defendant's Jaguar fragrance products are likely to believe they are manufactured, sponsored or authorized by the Plaintiffs. At the time Defendant began selling his Jaguar fragrance line, Plaintiffs had already applied the JAGUAR Trademark to a wide variety of consumer goods unrelated to automobiles, including clothing, umbrellas, leather accessories and sunglasses. "Since the Plaintiff had used its mark on an ever-expanding line of items over the years," consumers are more than likely to assume that the Jaguar mark used by the Defendant on its cologne originated with or is otherwise connected with or sponsored by the Plaintiffs. *See Geoffrey, Inc. v. Stratton d/b/a Phones–R–Us*, No. 88–05032 (C.D.Cal. July 25, 1990).

■ 11. As to the competitive proximity of the products, direct competition between the parties as to sales and advertising channels is not a prerequisite to relief under § 32(1) of the Lanham Act. "Confusion, or the likelihood of confusion, not competition, is the real test of trademark infringement." *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d at 257–58 (citing *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857, 861–62 (5th Cir.1967)). However, because of the strength of the JAGUAR Trademarks and the fact that both parties intend to sell cologne to men heightens the likelihood of confusion. *See Salton Inc. v. Cornwel Corp.*, 477 F.Supp. 975, 990–91 (D.N.J.1979).

■ 12. Finally, evidence of actual confusion is also not a prerequisite to a finding of likely confusion. *E. Remy Martin & Co. v. Shaw Ross Internat'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir.1985). Although evidence of actual confusion is difficult to uncover, *Girls Clubs of America, Inc. v. Boys Clubs of America, Inc.*, 683 F.Supp. 50, 54 (S.D.N.Y.1988), *aff'd*, 859 F.2d 148 (2nd Cir.1988), given that the Defendant is using a very similar mark as Plaintiffs on goods identical to Plaintiffs' Jaguar fragrance line, it is a virtual certainty that Defendant's continued use of the Jaguar mark will result in actual confusion.

13. Accordingly, the Court finds as a matter of law that the Defendant's continued use of the "Jaguar" and "Lady Jaguar" and Leaping Jaguar Trademarks is likely to cause confusion with Plaintiffs' famous JAGUAR Trademarks. Defendant shall be enjoined from using these confusingly similar marks under §§ 32(1) and 43(a) of the Lanham Act.

■ 14. Defendant's contention that he has a prior or superior right in the JAGUAR Trademark for cologne is without merit. "It is well settled that a trademark owner may protect his mark against the use by a latecomer of a confusingly similar mark on a product not yet sold by Plaintiff, but which consumers may believe is sold or otherwise sponsored by Plaintiff because it is within Plaintiff's natural business expansion." *Geoffrey, Inc. v. Stratton d/b/a Phones–R–Us*, No. 88–05032 (C.D.Cal. July 25, 1990), citing, *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1219 (9th Cir.1987); *Charles Schwab and Co., Inc. v. Hibernia Bank*, 665 F.Supp. 800, 807–08 (N.D.Cal.1987); *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560

F.2d 1325, 1331–32 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978); *E.I. DuPont de Nemours & Co. v. Yoshida International, Inc.,* 393 F.Supp. 502 (E.D.N.Y.1975).

15. In the present case, the Plaintiffs exercised their right to expand the use of their famous trademarks into new product categories, including fragrance products. Plaintiffs began marketing their Jaguar fragrance products in Europe in 1987 and the products had their United States launch in the summer of 1989. Accordingly, Defendant has acquired no rights in the JAGUAR Trademark senior to those owned by Plaintiffs.

16. Defendant's state trademark registration is not to be accorded any weight in this analysis since "state trademark law and registration cannot override rights provided by federal law or federal registrations." *J. McCarthy, Trademarks & Unfair Competition,* § 22:2 at 25 (2d Ed.1984); *see also Geoffrey, Inc.,* slip op. at 7.

17. In addition to relief under the Lanham Act, Plaintiffs are entitled to relief under Florida law. Florida Statutes § 495.-151 specifically provides that there may be injury or dilution even in the absence of confusion. Section 495.151 provides that any person using a mark is entitled to an injunction enjoining:

> [S]ubsequent use by another of the same or similar mark ... if it appears to the court that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark ... notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.

18. The underlying rationale of the dilution doctrine is to protect against "the whittling away of an established trademark's selling power and value through its unauthorized use by others upon dissimilar products." *Community Fed. Savings and Loan Association v. Orondorff,* 678 F.2d 1034, 1037 (11th Cir.1982) (quoting *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977)). There is a strong likelihood of dilution in the present case because purchasers will associate Defendant's Jaguar cologne with Plaintiffs' famous Jaguar automobile and related products, thereby diluting the unique quality of Plaintiff's marks. As the senior user of the JAGUAR Trademarks in Florida, Plaintiffs are entitled to prevent this diminution of their goodwill. *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1167 (11th Cir.1982). Accordingly, injunctive relief under Florida Statutes § 495.151 is appropriate here to prevent further jeopardy to Plaintiffs' JAGUAR Trademarks.

19. The Defendant has infringed and is infringing Plaintiffs' federal and common law rights in the Jaguar marks in violation of the Lanham Act and Fla.Stat. § 495.151.

20. If permitted to continue, Defendant's infringing use of the mark and trade name JAGUAR will injure Plaintiffs' business and reputation and dilute the distinctive quality of Plaintiffs' marks. Accordingly, Defendant is enjoined from use of the JAGUAR, LADY JAGUAR and LEAPING JAGUAR logo, and any other colorable imitation or simulation of Plaintiffs' marks. *See Chevron Chemical Company v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695 at 705–06 (5th Cir.1981); *Davidoff Extension S.A. v. Davidoff Internat'l, Inc.,* 612 F.Supp. 4, 8 (S.D.Fla.1984), *aff'd,* 774 F.2d 1178 (11th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).

21. This Court finds that the Defendant, Maurice Skandrani, did not intentionally engage in trademark infringement, unfair competition any acts constituting dilution. The Defendant did not engage in a deliberate scheme to create a false impression as to the affiliation of their product with Plaintiff's. We have made this determination after listening to the testimony of the Plaintiff and after consideration of all the evidence and testimony in this case.

First and foremost, the Defendant testified that he chose the name "Jaguar" and his accompanying logo because he observed that other perfumes with animal names and logos had been successful. The Defen-

dant has always contended that he was the first user. The Court finds that the Defendant operates under the assumption (albeit, the mistaken assumption), that unless Jaguar Cars had a trademark for perfume, his trademark was the controlling mark. In addition, it became apparent to the Court that Defendant believes that he holds a Federal trademark for his "Jaguar" fragrance lines because he had applied for such a trademark and because he received a notice of publication of same. Further, Defendant testified that although he was aware of the existence of Jaguar Cars, he in no way associated their existence with his perfume. Plaintiff's counsel, in fact, elicited testimony that Defendant Skandrani has no legal training and did not obtain legal advice before selecting the name "Jaguar" for his fragrance products. In fact, the Defendant testified that, in his opinion, any association of a car with a perfume was a detriment in terms of marketing.

Plaintiff takes the position that because Defendant marketed a line of "knock-off" perfume products which advertised that they were "like" other products, for example "Dakar, like Drakkar," this is an indication of Defendant's intent to infringe. However, we do not believe that this evidences an intent to infringe in this case. All the examples given by Plaintiff indicate nothing more than the fact that Defendant sold a line of "knock-off" products and he admitted that these products were "like" other products. However, he did not market the "Jaguar" fragrance line in this fashion. Defendant testified that he marketed several of his own fragrances in addition to selling "knock-off" and we find this testimony to be credible.

In addition, when Defendant first developed and began distribution of his "Jaguar" fragrances, Plaintiff had not yet entered the perfume market. Plaintiff's own witnesses testified that the Plaintiff introduced its "Jaguar" line of fragrances in Europe in 1988 and, in the United States in 1989 while Defendant began producing and marketing his own line of "Jaguar" fragrances in 1987.

We find that the Defendant did not act intentionally or with any deliberate scheme to take a "free ride" on the fame of Jaguar as Plaintiff alleges. Here, Defendant's testimony was credible as to his intention to market a perfume line with an animal connection, and it is buttressed by the fact that Plaintiff did not even market a perfume product when Defendant first introduced his "Jaguar" perfume line.

22. The Court finds that this case does not present an example of an "exceptional case" which would warrant an award of reasonable attorneys' fees pursuant to 15 U.S.C. section 1117. Here, we have found that the infringement was not intentional, willful or deliberate, thus we believe that attorneys' fees are not warranted. *See Dieter v. B & H Indus. of Southwest Florida*, 880 F.2d 322, 329 (11th Cir.1989) ("The legislative history indicates that a court should only award attorney fees in cases 'characterized as malicious, fraudulent, deliberate and willful' ") (quoting *St. Charles Mfg. Co. v. Mercer*, 737 F.2d 891, 894 (11th Cir.1983). Thus, Plaintiff's request for reasonable attorneys' fees is DENIED.

In addition, Plaintiff presented no evidence of any damages suffered as a result of Defendant's activities, therefore any request for damages is DENIED.

23. Additionally, Plaintiffs are entitled to an accounting of all of the Defendant's profits from the sale of their infringing Jaguar products pursuant to § 1117 of the Lanham Act. "[I]t is essential to deter companies from willfully infringing a competitor's mark, and the only way the courts can fashion a strong enough deterrent is to see to it that a company found guilty of willful infringement shall lose *all* its profits from its use of the infringing mark." *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970) (emphasis in original). However, Plaintiff did not present or elicit testimonial evidence of Defendant's profits. Plaintiff may have presented evidence of net sales within some of the numerous exhibits filed by the Plaintiff but at this point we are uncertain as to what Plaintiff is asserting that they are entitled to with respect to Defendant's profits.

24. This Court granted Plaintiffs' Motion To Dismiss Defendant Skandrani's Counterclaim in open court on November 15, 1990 reserving the right to set forth its reasoning at a later point. The Counterclaim which is somewhat unclear because it is not set apart from the answer in the pleadings (*see* DE 8) appears to set forth two alleged grounds for relief: 1) that the Plaintiffs' purpose in bringing this lawsuit is to harass and intimidate Defendant, and 2) that Defendant seeks to enjoin Plaintiff from marketing its "Jaguar" line of fragrance products. As for the first point, Defendant presented no evidence whatsoever to support this claim. As for Defendant's second point in his Counterclaim, Defendant presented no evidence entitling him to injunctive relief as against the Plaintiff.

Accordingly, it is

ORDERED AND ADJUDGED that Judgment be and the same is entered in favor of the Plaintiffs, Jaguar Cars Limited and Jaguar Cars, Inc., and against Defendant, Maurice Skandrani, said Judgment to include an injunction enjoining Defendant from further use of the Jaguar, Lady Jaguar and Leaping Jaguar logos.

IT IS FURTHER ORDERED AND ADJUDGED that pursuant to this Order Plaintiffs shall specifically identify the Exhibit, if such exists which represents evidence of Defendant's profits, and shall submit a proposed Final Judgment in accordance with this Order within fifteen calendar days from the date of this Order.

DONE AND ORDERED.