VICTORIA'S CYBER SECRET
LIMITED PARTNERSHIP,
Plaintiff,

v.

V SECRET CATALOGUE, INC., Victoria's Secret Direct, LLC, Victoria's Secret Stores, Inc., Intimate Beauty Corporation, d/b/a Victoria's Secret Beauty, Defendants/Counterclaimants.

No. 01–1095–CIV.

United States District Court,
S.D. Florida.

Sept. 10, 2001.

David Michael Goldstein, Miami, FL, for Plaintiff.

Arnaldo Velez, Law Offices of Arnaldo Velez, P.A., Coral Gables, FL, for Defendants/Counterclaimants.

Frank J. Colucci, David M. Dahan, Colucci & Umans, New York, NY, for Defendants/Counterclaimants.

## ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS/COUNTERCLAIMANTS

JAMES LAWRENCE KING, District Judge.

THIS MATTER is before the Court upon the motion for summary judgment filed by Defendants/Counterclaimants V Secret Catalogue, Inc., Victoria's Secret Direct, LLC, Victoria's Secret Stores, Inc. and Intimate Beauty Corporation d/b/a Victoria's Secret Beauty (collectively "Defendants" or "Victoria's Secret") filed May 23, 2001, and, after briefing by both sides, orally argued August 7, 2001.

## I. PROCEDURAL BACKGROUND

Victoria's Cyber Secret Limited Partnership (hereinafter referred to as "Plaintiff" or "VCS") commenced this action for a declaratory judgment on March 19, 2001. VCS owns four Internet domain names: "victoriassexsecret.com," "victoriassexysecret.com," "victoriasexsecret.com," and "victoriasexysecret.com". VCS sought declaratory judgment of its rights under 28 U.S.C. §§ 2201–2202 and an interpretation of whether or not its ownership of the disputed domain names violated 15 U.S.C. §§ 1051–1127 (the Lanham Act). The complaint asked further, in Count II, for a declaration by the Court that VCS's ownership and use of the disputed domain names did not violate the Internet Corporation for Assigned Names and Numbers Uniform Policy Rules for Domain Name Dispute Resolution (the "ICANN Policy").[1]

Count III of VCS's Complaint sought a declaration of their rights as to trademark and service mark infringement, unfair competition, false advertising, passing-off, and dilution, alleging that its ownership and registration of the disputed domain names did not create a violation of any law, federal or state, and that VCS was therefore entitled to use the domain names free from any interference by Defendants.

In their Answer, Victoria's Secret counterclaimed against Plaintiff VCS alleging federal trademark infringement, unfair competition, dilution, and violation of the Anticybersquatting Consumer Protection Act under the Trademark Act of July 5, 1946 (commonly referred to as the Lan-

1. The Plaintiff entered into a service agreement when it registered its domain names. The service agreement incorporated the ICANN Policy.

ham Act), 15 U.S.C. § 1051, *et seq.*, as amended; 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). Further, Defendant sought relief for related state and common law violations of trademark infringement, dilution, unfair competition, and unfair and descriptive trade practices, under 28 U.S.C. § 1367.[2] The Answer to the Complaint and Counterclaim by Defendants were filed May 17, 2001.

On the following day, May 18, 2001, the Defendants filed a plethora of pleadings directed to its subsequently filed (May 23, 2001) motion for summary judgment.[3] Plaintiff VCS, responded to Defendants' Motion for Summary Judgment on June 29, 2001[4]

After full briefing by both sides, the issues raised by Defendants' Motion for Summary Judgment was orally argued August 7, 2001. According to the Clerk's docket sheet record of the filings in this case, no depositions or other discovery have been conducted by either side.

## II.  STATEMENT OF UNCONTESTED FACTS

Victoria's Secret is the dominant lingerie brand in America and signifies a leading source of apparel and personal care products offered under the VICTORIA'S SECRET Mark.[5] Victoria's Secret sells its merchandise in its own Victoria's Secret retail stores, catalogue and on its website. More than 1300 Victoria's Secret lingerie and beauty stores are in operation across the country. (Beraud Decl., ¶ 3.) The Victoria's Secret catalogue circulates hundreds of millions of issues annually. (*See* Pozy Decl., ¶ 3.) In addition, the Victoria's Secret website, *www.victoriassecret.com*, is one of the most popular and profitable in e-tailing. (*See* Mitchell Decl., ¶ 6; Pozy Decl., ¶ 9.)

The Victoria's Secret brand is heavy advertised. (*See* Beraud Decl., ¶¶ 6–8; Pozy Decl., ¶ 10.) Victoria's Secret merchandise is extensively advertised on an ongoing basis through all media, including primarily, but not limited to, catalog mailings, the internet, print, television and international fashion shows. (*See* Pozy Decl., ¶¶ 6–9, Beraud Decl., ¶¶ 6–8.) Victoria's Secret stores sells primarily intimate apparel and personal care products, while Victoria's Secret Direct, through the Victoria's Secret catalog, sells a broader range of outerwear such as swimsuits and accessories in additional to intimate apparel. (*See* Beraud Decl., ¶ 3; Pozy Decl., ¶ 2.) Total merchandise sales through the Victoria's Secret stores and the Victoria's Secret catalog, for the year 2000 alone, approached 3 billion dollars. (*See* Beraud Decl., ¶ 5; Pozy Decl., ¶ 8.)

The VICTORIA'S SECRET Mark has been used continuously by Victoria's Secret in the United States since at least 1982, is registered with the United States Patent and Trademark Office, and has come to symbolize the enormous goodwill of Victoria's Secret and its merchandise in

---

**2.** The trademark dilution counterclaim alleged state law violation is predicated upon Fla. Stat. Ann. § 495.151; the alleged violation of Florida's consumer protection law is based upon Fla. Stat. § 501.204 (deceptive and unfair trade practices).

**3.** Defendants' May 17, 2001 filings included: (a) Defendants' Legal Memorandum in Support of Motion for Summary Judgment, (b) a Statement of Material Facts Pursuant to Local Rule 7.5, and (c) a Declaration of Frank J. Colucci Supporting Defendants' Motion for Summary Judgment.

**4.** In support of its opposition papers, Plaintiff submitted the Affidavit of R.S. Schmitt and a Statement of Disputed Facts. Subsequently, Plaintiff filed an original Declaration of Victoria Silvstedt on June 17, 2001.

**5.** Victoria's Secret owns a number of the United States Trademark Registrations for the mark Victoria's Secret.

this country as well as throughout the world. (*See* Mitchell Decl., ¶¶ 2, 7; Lyons Decl., ¶ 3.)

Victoria's Secret Stores, Inc., Victoria's Secret Direct, LLC and Intimate Beauty Corporation are the exclusive United States licensees of V Secret Catalogue, Inc., which is the record owner of the VICTORIA'S SECRET Mark registered in the United States Patent and Trademark Office ("PTO") for a variety of goods and services. (*See* Lyons Decl., ¶ 3.) Each of Victoria's Secret's registrations are valid, subsisting and now in full force and effect. (*See* Lyons Decl., ¶ 4.)

As a result, the VICTORIA'S SECRET Mark has become and is now a well-known and famous mark.

On May 5, 1998, Plaintiff VCS registered four domain names to be used as adult entertainment internet sites. Between May 1998 and January 2001 Plaintiff did not use the domain names or launch any websites connected to the names.

In May of 2000, Victoria's Secret sent Plaintiff VCS a cease and desist letter (Complaint, Ex. A). VCS responded by stating in an e-mail to Victoria's Secret's counsel that "[t]he aforementioned web address(es) are available for your company(s) to take into their possession, upon your legal representative(s) delivering an amicable transfer agreement to our Legal Counsel …." Counsel for Victoria's Secret sent the registrant name change agreements to Plaintiff's counsel, but neither Plaintiff nor Plaintiff's counsel returned the signed agreements to Defendants' counsel. (Colucci Decl., ¶ 5, Ex. B.)

On January 22, 2001, Victoria's Secret filed a petition to the National Arbitration Forum ("NAF") pursuant to the ICANN Policy to prevent Plaintiff from continuing to use Plaintiff's domain names.

On March 9, 2001, the NAF decided that Plaintiff's registration of Plaintiff's domain names would result in confusion with Defendants' VICTORIA'S SECRET Marks:

> Further, Respondent's domain name is confusingly similar because a reasonable Internet user seeking [Victoria's Secret's] mark would assume that [Plaintiff's] domain name is somehow associated with [Victoria's Secret's] famous mark. [NAF Citation Omitted]

> The panel finds that [Plaintiff's] domain names are confusingly similar to [Victoria's Secret's] well-established mark and family of marks.

(Colucci Decl., Ex. 12.)

The NAF ordered Plaintiff to transfer its four domain names to Defendants. Plaintiff did not comply with the NAF order.

This motion for summary judgment presents the Court with the same issue as that faced by the NAF, namely, whether Plaintiff's registration of Plaintiff's domain names is likely to result in confusion with Defendants' VICTORIA'S SECRET Mark, and whether Plaintiff's actions in registering domain names which incorporate Defendants' famous VICTORIA'S SECRET Mark, constitute cybersquatting, and are likely to dilute the VICTORIA'S SECRET Mark. In addition, Defendants present an issue involving Plaintiff's use of its trade name not presented to the NAF.[6]

As recently as March 19, 2001, this Court rendered a decision involving the very Defendants now before the Court in a strikingly similar case captioned *Nino Chandnani v. V Secret Catalogue, Inc., Intimate Beauty Corporation, Victoria's*

---

**6.** Victoria's Secret has sought an injunction against Plaintiff's use of Victoria's Cyber Se-cret Limited as a partnership name.

*Secret Stores, Inc. and Victoria's Secret Catalog, L.L.P.,* Case No. 00–7820–CIV–FERGUSON, 2001 WL 586692 (S.D.Fla. 2001) ("the *Chandnani* decision," attached hereto as Exhibit 1).

In *Chandnani,* the declaratory-judgment Plaintiff sought a declaration that its domain name registration of Victoriassecret-watches.com did not infringe Defendants' VICTORIA'S SECRET Mark, a contention the Court rejected by issuing a Temporary Restraining Order against the Plaintiff on the basis of the domain name's confusing similarity with, and dilution of, Defendants' VICTORIA'S SECRET Mark.

### III. CONTESTED FACTS

There appeared to be few, if any, material contested facts.

All of the statement of facts reflected in Section II of this opinion are not in any substantial dispute between the parties. Careful review of the Schmitt Affidavit, Plaintiff's Statement of "Disputed Facts" and Memorandum of Law submitted in opposition to Defendant's Summary Judgment clearly reflect Plaintiff's substantial agreement with all of the factual allegations set forth above. Namely, there is no dispute over the physical acts taken by both parties in registering their marks and domain names, the "famousness" of the VICTORIA SECRET Mark, or the actual or intended uses of both parties with respect to their claimed property rights in the mark and domain names. In the same vain, there is no contest over Defendant's billion dollar business or massive expenditures for advertisement, publicity of magazines and promotion.

The defensive assertions by Plaintiff to the summary judgment motion are predicated upon an interpretation of the foregoing facts when construed in light of the Lanham Act, Florida statutes and the common law. For example, the Schmitt Affidavit contains positive, albeit conclusory, statements of his personal opinion that neither he nor anyone else at VCS selected, registered, or attempted to use the name "Victoria's Cyber Secret Limited Partnership" or the four disputed domain names with intent to (1) profit, (2) benefit from the goodwill of Defendant's mark, (3) intend to divert customers, (4) intend to tarnish or disparage Victoria's Secret, (5) intend to create confusion to indicate that the proposed website would be utilized under sponsorship of Defendant and (6) plan to advertise or market VCS in overlap with Defendant's advertising and marketing. Mr. Schmitt further asserted that the disputed domain names were chosen "because the website that was planned and developed by VCS was to be marketed using the name and likeness of Victoria Silvstedt and to capitalize upon her fame as a model and Playboy's 1997 Playmate of the Year status." Ms. Silvstedt, Plaintiff alleges, was paid for a photo shot and her attendance as a spokesmodel at the XWebExpo'98 Convention held June 18, 1998 in New Jersey and where ultimately Victoria Silvstedt was featured on the cover of the XWebExpo Magazine for that convention. (Schmitt Decl., ¶¶ 1–6.)

The Affidavit (and Plaintiff's contentions) assert that funding for the project did not materialize as anticipated and VCS's website was never placed on the internet as planned and the disputed domain names do not, therefore, direct the internet user to the website. The Affidavit sets forth that the disputed domain names and the trade name "Victoria Cyber Secret" are currently not being used for the offering of goods or services to the public nor is there an adult entertainment website at the internet locations represented by the disputed domain names.

Plaintiff's Statement of Disputed Facts, filed June 29, 2001, tracks the Schmitt Affidavit dealing primarily with a dispute

over a suggested issue of fact and dispute over VCS's intent in using the trade name "Victoria Cyber Secret" and registering the disputed domain names.

Both parties are therefore in substantial agreement that all issues presented in this litigation are matters of law interpreting basically uncontradicted facts (as set forth in Sections II and III of this Order).

## IV. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted). The Court must view the evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exits. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then the Court should refuse to grant summary judgment. *See id.* at 919. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50, 106 S.Ct. 2505.

This Court has long recognized that summary judgment may readily be granted in cases involving violations of the Lanham Act. *See Trail Chevrolet, Inc. v. General Motors Corp.,* 381 F.2d 353 (5th Cir. 1967); *Walt Disney World Co. v. Disney Area Acreage, Inc.,* 316 F.Supp. 285 (S.D.Fla.1970); *Blue Cross and Blue Shield Assoc. v. Blue Cross Mut. Clinic, Inc.,* 612 F.Supp. 41 (S.D.Fla.1985); *Varitronics Sys., Inc. v. Merlin Equip., Inc.,* 682 F.Supp. 1203 (S.D.Fla.1988).

## V. DISCUSSION

### A. The Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

Defendants contend that Plaintiff VCS acted in bad faith, with intent to profit from registration of Plaintiff's domain names in violation of the Anticybersquatting Consumer Protection Act ("ACPA"). *See* 15 U.S.C. § 1125(d)(1)(A).[7]

The Anticybersquatting Consumer Protect Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See id.*

---

**7.** 15 U.S.C. § 1125(d)(1)(A) reads:

A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person -
(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that -
(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; ...

In reviewing Congressional intent in passing ACPA in 1999, Judge Calabresi, speaking for the 2nd Circuit Court of Appeals said:

> "That law was passed 'to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive mark as Internet domain names with the intent to profit from the goodwill associated with such marks—a practice commonly referred to as 'cybersquatting''." S.Rep. No. 106–140, at 4. In particular, Congress viewed the legal remedies available for victims of cybersquatting before the passage of the ACPA as "expensive and uncertain." H.R.Rep. No. 106–412, at 6. The Senate made clear its view on this point:

> While the [FTDA] has been useful in pursuing cybersquatters, cybersquatters have become increasingly sophisticated as the case law has developed and now take the necessary precautions to insulate themselves from liability. For example, many cybersquatters are now careful to no longer offer the domain name for sale in any manner that could implicate liability under existing trademark dilution case law. And, in cases of warehousing and trafficking in domain names, courts have sometimes declined to provide assistance to trademark holders, leaving them without adequate and effective judicial remedies. This uncertainty as to the trademark law's application to the Internet has produced inconsistent judicial decisions and created extensive monitoring obligations, unnecessary legal costs, and uncertainty for consumers and trademark owners alike.

S.Rep. No. 106–140, at 7. In short, the ACPA was passed to remedy the perceived shortcomings of applying the FTDA in cybersquatting cases such as this one. The new act accordingly amends the Trademark Act of 1946, creating a specific federal remedy for cybersquatting.

*Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489 (2nd Cir.2000).

## B. Bad Faith Intent to Profit.

■ Turning into an analysis of the issue of whether or not Plaintiff VCS, recognizing the fame and tremendous goodwill and selling power inherent in the VICTORIA'S SECRET Mark, without authorization, deliberately and intentionally misappropriated Defendants' VICTORIA'S SECRET Mark in connection with its registration of four (4) domain names: victoriasexsecret.com, victoriassexsecret.com, victoriasexysecret.com and victoriassexysecret.com by selecting and registering its domain names with full knowledge of Defendant Victoria's Secret Stores, catalog businesses and websites (*www.victoriassecret.com*) and with a "bad faith intent to profit," the Court considers the nine factors enumerated in 15 U.S.C. § 1125(d)(1)(B)(i).[8]

---

8. These factors are:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the

In determining bad faith intent, the Court may consider all relevant factors and is not limited to the nine listed factors in determining whether or not the bad faith criteria has been met. 15 U.S.C. § 1125(d)(1)(B)(i); *see also Mattel, Inc. v. Internet Dimensions, Inc.*, 55 U.S.P.Q.2d 1620, 1622 (S.D.N.Y.2000); *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 270 (4th Cir.2001).

Examining the pertinent bad faith factors impels the conclusion that Plaintiff VCS's registration and use of its domain names constitute a violation of the ACPA. In particular, Plaintiff VCS has no valid trademark rights in the VICTORIA'S SE-CRET Mark and none of Plaintiff VCS's domain names bears any relation to the site's proposed use as an adult entertainment website. It requires a quantum leap of imagination to believe that a user of the internet, searching for an adult entertainment website, would have the requisite information or knowledge to connect in some way the name of Playboy bunny Victoria Silvstedt with his or her website search. Plaintiff VCS owns no trademark registrations for Victoria's Secret or for any of Plaintiff VCS's domain names, nor has it used at some earlier time, any of the domain names in connection with the bona-fide offering of any goods or services.

Defendants Victoria's Secret has used the VICTORIA'S SECRET Mark since at least 1982, whereas Plaintiff VCS registered its infringing domain names recently on May 4, 1998. (*See* Colucci Decl., Ex. 8.) In addition, Plaintiff VCS originally agreed to transfer Plaintiff's domain names to Victoria's Secret, a promise it subsequently rescinded. (*See id.* at ¶ 5, Ex. 6.) Accordingly, the first, second and third statutory factors demonstrate that Plaintiff VCS registered its domain names with a bad faith intent to trade upon the fame of the VICTORIA'S SECRET Mark and its extensive goodwill and reputation.

Likewise, Plaintiff VCS completely incorporated the famous VICTORIA'S SE-CRET Mark into all four of its domain names, which, according to VCS, are intended to be used for commercial gain to advertise, promote and offer for sale goods through adult entertainment websites. Such use is not noncommercial or fair. Plaintiff's domain names potentially may divert Internet consumers looking for Victoria's Secret's website to its own websites. Thereafter, consumers are likely to be confused, misled or deceived into the mistaken belief that VCS's websites are endorsed by Victoria's Secret, which will undoubtedly harm the goodwill and reputation symbol-

mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or

the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning os subsection (c)(1) of 15 U.S.C. § 1125(d)(1)(B)(i).

ized by the VICTORIA'S SECRET Mark. This record is devoid of any evidence regarding Plaintiff VCS's offer to sell or assign the domain names, or any indication Plaintiff VCS furnished false and misleading contact information when applying for the registration of the domain names. With respect to factor eight, i.e., registration of domain names which the person knows are identical to another famous name (without regarding to goods or services of the parties), it is clear that Plaintiff VCS violated this factor. Thus, the fourth, fifth, eighth and ninth statutory factors weigh in favor of a finding that Plaintiff VCS registered the four disputed domain names in bad faith.

As noted above, Plaintiff VCS alleges that its actual intention in registering the disputed domain names was to profit from the fame and notoriety of the 1997 Playboy Playmate of the Year, Victoria Silvstedt, who was the spokesmodel for the website that Plaintiff VCS planned to maintain using the disputed domain names. (*See* Schmitt Decl., ¶¶ 15–16, 24.)

It is undisputed however, that Victoria Silvstedt has formally terminated Plaintiff VCS's rights to utilize her name in connection with Plaintiff's business or Plaintiff's domain names.[9] (*See* Schmitt Decl., ¶ 28; Silvstedt Decl., ¶¶ 2, 4.) Thus, Plaintiff VCS's asserted justification for its registration and refusal to relinquish domain names incorporating "Victoria's" and "Secret" evaporates.

The Schmitt Declaration submitted by VCS only highlights its lack of good faith justification for registering and maintaining the domain names and filing the instant civil action. Plaintiff VCS registered the infringing domain names on May 5, 1998. As Plaintiff VCS asserts, its websites were never created using the infringing domain names, none currently exist and there are no plans to utilize the domain names in the future. (*See* Schmitt Decl., ¶¶ 25–28.) In fact, Ms. Silvstedt herself makes clear that she has no business affiliation with Plaintiff VCS, and that Plaintiff VCS does not even have her permission to use her name in any fashion whatsoever. (*See* Silvstedt Decl., ¶¶ 1, 2, 4.) Thus, Plaintiff VCS's stated justification for using the name "Victoria" in its domain names, no longer exists.

Plaintiff VCS does not give any justification in this record for choosing a series of domain names containing the word "secret" or "secrets," which, obviously is a major component of the VICTORIA'S SECRET Mark. Indeed, it is obvious even to a casual observer that the similarity between VCS's domain names and the Victoria Secret Mark is overwhelming. *See Virtual Works*, 238 F.3d at 270.

Plaintiff places substantial reliance on the Schmitt Declaration for its contention that it lacks the bad faith intent under the Anti–Cybersquatting Act. Statements of denial of bad faith, in and of themselves,

---

**9.** Victoria Silvstedt's affidavit reads in part: "Please be advised of the following in regards to the above civil action against Victoria's Cyber Secret Limited Partnership ('VCSLP'):

1. I no longer conduct any type of business with VCSLP, nor do I have any type of ongoing affiliation or contractual obligation with VCSLP.
2. My previous association with VCSLP has been formally terminated, which no longer gives them any rights to continue to use my name or likeness in any manner whatsoever.
3. I have no attention [sic] of entering future business association or affiliation with VCSLP.
4. I by no means authorize the VCSLP to use the domain names of victoriassexsecret.com, victoriasexysecret.com and/or victoriassexysecret.com in regarding to associating my name and likeness to these domains."

saying "it was not my intent," are insufficient to demonstrate lack of bad intent:

> All but the most blatant cybersquatters will be able to put forth at least some lawful motives for their behavior. To hold that all such individuals may qualify for the safe harbor would frustrate Congress' purpose by artificially limiting the statute's reach. We do not think Congress intended the safe harbor to protect defendants operating, at least in part, with unlawful intent.

*Id.* at 270.

Viewing the facts in the summary judgment record in the light most favorable to VCS, the Court finds that the evidence and totality of *circumstances* are clear that VCS operated with a bad faith intent to profit from the VICTORIA'S SECRET Mark. *See, e.g., id.* at 270 (finding bad faith on summary judgment); *E. & J. Gallo Winery v. Spider Webs Ltd.,* 129 F.Supp.2d 1033, 1046–47 (S.D.Tex.2001) (same).

**C. Strength of Mark.**

■ The Court must determine whether Defendants' Mark, VICTORIA'S SECRET, is distinctive or famous. *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I), (II). As the Second Circuit has held:

> "Distinctiveness refers to inherent qualities of a mark and is a completely different concept from fame. A mark may be distinctive before it has been used— when its fame is nonexistent. By the same token, even a famous mark may be so ordinary, or descriptive as to be notable for its lack of distinctiveness."

*Sporty's Farm,* 202 F.3d at 497 (citing *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 215–26 (2nd Cir.1999)).

Since Victoria's Secret, taken as a whole, does not suggest or describe the goods or services offered thereunder, it is an arbitrary mark. As such, it is entitled to the greatest degree of protection. *Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1335–36 (11th Cir.1999).

Not only is the VICTORIA'S SECRET Mark the subject of a number of registrations in the United States Patent and Trademark Office on the Principal Register, they have also become incontestable.[10] A registration on the Principal Register provides *prima facie* evidence of, *inter alia,* the registrant's ownership and exclusive right to use the marks, 15 U.S.C. § 1057(B), as well as proof of the continual use of the marks dating back to the filing date of the applications for registration. *J.C. Hall Co. v. Hallmark Cards, Inc.,* 52 C.C.P.A. 981, 340 F.2d 960, 962 (C.C.P.A. 1965). Furthermore, a Principal Register registration is constructive notice of a claim of ownership so as to eliminate any defense of good faith adoption. 15 U.S.C. § 1072.

As recently as March 19, 2001 this Court acknowledged the strength and fame of the VICTORIA'S SECRET Mark. *Chandnani* ("Victoria's Secret has come to symbolize enormous goodwill and selling power of its products in this country and abroad."); *see also, V. Secret Catalogue, Inc. v. Victor's Little Secret,* 54 U.S.P.Q.2d 1092, 1094 (W.D.Ky.2000). Accordingly, the Court therefore finds that Defendants' VICTORIA'S SECRET Mark is distinctive.

Further, this record clearly establishes that Defendants' VICTORIA'S SECRET Mark is entitled to a designation of "famous."

1. Victoria's Secret is a dominant brand in America and a leading source of apparel and personal care

---

**10.** After a mark has been registered for five years and its owner files the affidavit required by Sections 8 and 15 of the Lanham Act, the mark becomes incontestable, further enhancing its strength. *Frehling,* 192 F.3d at 1336.

products offered under the VICTORIA'S SECRET Mark. (*See* Mitchell Decl., ¶ 8.)

2. Defendant Victoria Secret sells its merchandise in over 1,300 Victoria's Secret lingerie and beauty stores across the United States. (*See* Beraud Decl., ¶ 3; Pozy Decl., ¶ 29.)

3. Defendants Victoria Secrets have published and distributed nearly 2 billion copies of the Victoria's Secret catalog nationally and internationally in the last six years. (*See* Pozy Decl., ¶ 3.)

4. Defendants Victoria's Secret website, *www.victoriassecret.com,* is one of the most popular and profitable in e-tailing merchandising. (*See* Mitchell Decl., ¶ 6; Pozy Decl., ¶ 9.) Sales merchandise conducted through the various outlets owned and operated by Defendants Victoria's Secret Stores, Inc., Victoria's Secret Direct, LLC, V Secret Catalogue, Inc. and Intimate Beauty Corporation have steadily increased over the years commencing in 1991 with sales of $754,000,000 to the approximate figure of $2 billion dollars a year for the last two years. (*See* Beraud Decl., ¶ 5.) The total exceeds $11 billion dollars.

5. During the past ten years, Defendants Victoria's Secret have expended massive sums on advertising and promotional expenditures for its merchandise, totaling approximately $325,000,000. (*See* Beraud Decl., ¶ 8.)

The massive advertising budgets and extensive promotion of merchandise bearing the VICTORIA'S SECRET Mark has made it one of the most famous trademarks in the world. The Court, therefore, concludes and finds that, for the purposes of § 1125(d)(1)(A)(ii)(1), (2), the VICTORIA'S SECRET Mark is both "famous" and "distinctive."

**D. The Likelihood of Confusion.**

■ Another issue before this Court is whether VCS's domain names, victoriasexsecret.com, victoriassexsecret.com, victoriasexysecret.com and victoriassexysecret.com, are confusingly similar to the VICTORIA'S SECRET Mark. VCS contends that its domain names are not confusingly similar because they consist of the legal name of Playboy model Victoria Silvstedt, for whom Plaintiff VCS had intended on promoting websites. Victoria's Secret, on the other hand, maintains that its domain names do not contain the full legal name of Victoria Silvstedt. Therefore, the domain names can be categorized as intentional misspellings of the Victoria's Secret website, victoriassecret.com.

In the Eleventh Circuit, courts consider the following seven factors in assessing whether or not a likelihood of confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendant's (or in this case, Counter-defendant's) intent; and (7) actual confusion. *Frehling,* 192 F.3d at 1335. As this Court has previously noted "[t]he plaintiff need not prevail on all seven factors to support a claim of trademark infringement." *E.R. Squibb & Sons, Inc. v. Princeton Pharm., Inc.,* 17 U.S.P.Q.2d 1447, 1451 (S.D.Fla.1990). In the Eleventh Circuit, the first and last factors are the most important. *Frehling,* 192 F.3d at 1335; *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 122 F.3d 1379, 1382 (11th Cir.1997); *Dieter v. B & H Indus. of S.W. Fla., Inc.,* 880 F.2d 322, 326 (11th Cir.1989), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990).

Considering the relevant factors, it is clear that VCS's domain names are confusingly similar to the VICTORIA'S SECRET Mark.

### 1. Type of Mark

As discussed above, the VICTORIA'S SECRET Mark, an arbitrary mark entitled to the greatest degree of protection, is both distinctive and famous. Similarity to this type of mark increases the likelihood of confusion.

### 2. The Similarity of the Marks.

The taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law. *See People for the Ethical Treatment of Animals, Inc. v. Doughney,* 113 F.Supp.2d 915, 920 (E.D.Va.2000). Registering Internet domain names which are intentional misspellings of famous trademarks also violates the ACPA. *See Shields v. Zuccarini,* 254 F.3d 476, 485 & n. 5 (3d Cir.2001).

In *Shields,* Mr. Zuccarini registered various misspelled versions of Mr. Shields' popular Website cartoon, *www.joecartoon.com.* Mr. Zuccarini, a "wholesaler" of Internet domain names, registered five domain name variations of Mr. Shields' site—joescartoon.com, joecarton.com, joescartons.com, joescartoons.com and cartoonjoe.com. Mr. Shields filed suit and the district court found that Zuccarini had intentionally misspelled the famous mark of Joe Cartoon for his own profit.

All four of Plaintiff CVS's domain names as well as Plaintiff CVS's trade name incorporate Defendants' VICTORIA'S SECRET Mark *in its entirety.* Plaintiff CVS's domain names only insert the generic words "sex" or "sexy" between VICTORIA'S and SECRET, rendering the marks nearly identical as to Defendants Victoria's Secret website.

Plaintiff VCS's contention that the addition of "sex" or "sexy" to the VICTORIA'S SECRET Mark serves to dispel similarity and confusion is completely without basis. Unlike a traditional trademark dispute, where identical marks can be used, only one party can register a domain name, thus the slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant. *See PACCAR, Inc. v. Telescan Technologies, L.L.C.,* 115 F.Supp.2d 772, 777 (E.D.Mich.2000) (plaintiff owner of PETERBILT and KENWORTH trademarks entitled to injunction against defendant's use of peterbilttrucks.com, peterbiltnewtrucks.com, peterbiltusedtrucks.com, peterbilttrucks.com, peterbiltdealers.com, peterbilttruckdealers.com, kenworthnewtrucks.com, kenworthusedtrucks.com. kenworthdealers.com and kenworthtruckdealers.com); *Cardservice Int'l, Inc. v. McGee,* 950 F.Supp. 737 741 (E.D.Va.1997); *aff'd,* 129 F.3d 1258 (4th Cir.1997) (plaintiff owner of CARDSERVICE trademarks entitled to injunction against defendant's use of cardservice.com)

Moreover, it is a bedrock axiom of the Lanham Act that the addition of generic or minor words to a trademark, especially a famous trademark, notwithstanding the positioning of the words, does nothing to abate likely confusion or dilutive effect. *See Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Assoc.,* 651 F.2d 311, 316 (5th Cir.1981) ("Whether an addition is sufficient to prevent confusion in a particular instance depends upon the strength of the main part of the mark [here: VICTORIA'S SECRET] and the distinctiveness of the additional feature [here: sex or sexy]."); *A.C. Legg Packing Co. v. Olde Plantation Spice Co.,* 61 F.Supp.2d 426, 431 (D.Md.1999) (OLDE PLANTATION infringed by OLD PLAN-

TATION SPICE); *Rockland Mortgage Corp. v. Shareholders Funding, Inc.*, 835 F.Supp. 182, 192 (D.Del.1993) ("Even taking defendant's evidence at face value, the addition of one word with no inherent distinctiveness [NATIONAL] does not remove the aural similarity between the two marks."). Accordingly, the fact that VCS's domain names are practically identical to the VICTORIA'S SECRET Mark weighs heavily in favor of the Defendants.

### 3. Similarity of the Products the Marks Represent

VCS's proposed websites will offer adult entertainment. Victoria's Secret is the dominant lingerie brand in America and signifies a leading source of apparel and personal care products offered under the VICTORIA'S SECRET Mark. The dissimilarity of the products the marks represent decreases the likelihood of confusion.

### 4. Similarity of the Parties' Retail Outlets (Trade Channels) and Customers.

Plaintiff VCS's proposed adult entertainment websites will be located on the Internet at all four of its domain names. Defendants Victoria's Secret also sells their merchandise online at *www.victoriassecret.com* as well as in their retail shops and catalog. (*See* Mitchell Decl., ¶¶ 5–6.)

Similarity of the Internet trade channel is significant because Internet consumers often do not have the opportunity to exercise the degree of care they might ordinarily use if the goods/services were before them. Plaintiff VCS's complete incorporation of the VICTORIA'S SECRET Mark into Plaintiff VCS's domain names and trade name is likely to cause consumers to erroneously believe that Plaintiff VCS's future websites are authorized by, or affiliated with, Defendants Victoria's Secret, or are part of Victoria's Secret's Internet operation. Finally, the additional channels of trade used by De-

fendants Victoria's Secret do not negate a finding in its favor with respect to this factor because direct competition between the parties is not required. *See Jaguar Cars Ltd. v. Skandrani*, 771 F.Supp. 1178, 1184 (S.D.Fla.1991). Accordingly, the similarity of the parties' retail outlets (trade channels) and customers increases the likelihood of confusion.

### 5. Similarity of Advertising Media.

It is apparent from the intended purpose of Plaintiff CVS's future websites that advertising of websites offered under its domain names will inevitably occur to attract Internet users to the four sites. Thus, because the advertising media is inherently similar, i.e., the Internet, overlap in the reach of the parties' respective advertising is likely. *See Frehling*, 192 F.3d at 1340. Plaintiff VCS should not be permitted to ride the coattails of Defendants Victoria's Secret's extensive advertising. Thus, this factor weighs heavily in favor of a finding of likelihood of confusion. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1055, 1057 (9th Cir.1999).

### 6. VCS's Intent.

As discussed above, the evidence and totality of circumstances are clear that VCS operated with a bad faith intent to profit from the VICTORIA'S SECRET Mark. This factor weighs heavily in favor of Victoria's Secret. Indeed, this Court has previously stated "if a defendant's intent to derive benefit from a plaintiff's distinctive mark is clear and unrebutted by evidence to the contrary, intent alone, without consideration of the other facts, may support a finding of trademark infringement." *Squibb*, 17 U.S.P.Q.2d at 1451; *Sigma Chi Fraternity v. Sethscot Collection*, 2000 U.S. Dist. LEXIS 6332, at *24 (S.D. Fla. April 7, 2000).

### 7. Actual Confusion.

It is axiomatic that proof of actual confusion is not required in order for a court to conclude that confusion is likely. *Frehling,* 192 F.3d at 1340; *Squibb,* 17 U.S.P.Q.2d at 1452. Defendants have not, at this early stage of discovery proven specific acts of actual confusion.

However, in the instant case, Plaintiff VCS intentional misspellings of the VICTORIA'S SECRET Mark was for the purpose of making a future profit on adult entertainment websites. Plaintiff CVS's four domain names victoriasexsecret.com, victoriassexsecret.com, victoriasexysecret.com and victoriassexysecret.com are misspellings of the Defendants Victoria's Secret's trademark name and website, victoriassecret.com. More importantly, Plaintiff CVS's domain names contain neither the full legal name of the Playboy model Victoria Silvstedt which it claims to promote, nor of the Victoria's Cyber Secret Limited Partnership itself. Therefore, Plaintiff CVS's domain names are confusingly similar to that of Defendants' VICTORIA'S SECRET Mark showing that Plaintiff VCS intended to trade on Defendants Victoria's Secret's goodwill.

As this Court noted in *Squibb,* it is not necessary to find the existence of all seven factors in order to conclude that the trademark owner has sustained its burden of proof. 17 U.S.P.Q.2d at 1452. However, all but two of the seven factors by which the likelihood of confusion is evaluated are amply proven here. Accordingly, it is not just likely, but highly probable that Plaintiff VCS's intentional copying of Defendants Victoria's Secret famous and celebrated VICTORIA'S SECRET Mark causes or will cause consumer confusion and thus, constitutes trademark infringement in violation of the Lanham Act.

### E. Plaintiff CVS's Ability to Use the Statutory Safe Harbor Provision.

The ACPA has a safe harbor provision which provides that bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Plaintiff VCS contends that it registered the disputed four domain names with the reasonable belief that their use was fair and otherwise lawful. Plaintiff VCS relies on the affidavit of its president Schmitt that he never registered the domain names with the intent to profit from Defendants' VICTORIA'S SECRET Mark. (*See* Schmitt Decl., ¶¶ 4–5.) As stated above, VCS cannot simply deny that it had any bad faith intent, since doing so would allow any cybersquatter to use the safe harbor provision to frustrate Congress' purpose by artificially limiting the statute's reach. *Virtual Works* at 270. The evidence and totality of circumstances are clear that VCS operated with a bad faith intent to profit from the VICTORIA'S SECRET Mark, even if it meant to also profit from Victoria Silvstedt's name. "A defendant who acts even *partially* in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the Act's safe harbor provision." *Virtual Works,* 238 F.3d at 270 (emphasis added). Thus, Plaintiff VCS will not be able to benefit from the safe harbor provision of the ACPA.

### F. Injury to Victoria's Secret's Business Reputation and Dilution.

VCS's use of the VICTORIA'S SECRET Mark also violates the Federal Trademark Dilution Act of 1995 ("FTDA"), codified as 15 U.S.C. § 1125(c)(1). Plaintiff VCS's use of the VICTORIA'S SECRET Mark is likely to dilute, through

blurring or tarnishment, the extraordinary distinctiveness and uniqueness of the famous VICTORIA'S SECRET Mark. *See Nailtiques Cosmetic Corp. v. Salon Sciences Corp.,* 41 U.S.P.Q.2d 1995, 1998 (S.D.Fla.1997).

■ To prevail on a federal dilution claim, Defendants Victoria's Secret must demonstrate that: (1) their mark is famous; (2) Plaintiff VCS registered its domain names and trade name after the VICTORIA'S SECRET Mark became famous; (3) Plaintiff VCS's mark diluted the VICTORIA'S SECRET Mark; and (4) Plaintiff VCS's use is commercial and in commerce. *See Carnival Corp. v. SeaEscape Casino Cruises, Inc.,* 74 F.Supp.2d 1261, 1269 (S.D.Fla.1999). Further, the FTDA defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. The FTDA further provides a nonexclusive list of factors that a court may consider to determine whether the plaintiff's mark is famous and distinctive:

(a) the degree of inherent or acquired distinctiveness of the mark; (b) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (c) the duration and extent of advertising and publicity of the mark; (d) the geographical extent of the trading area in which the mark is used; (e) the channels of trade for the goods or services with which the mark is used; (f) the degree of recognition of the mark in the trading areas and channels of trade of the mark's owner and the person against whom the injunction is sought; (g) the nature and extent of the use of the same or similar marks by third parties; and

(h) whether the mark was registered ....

15 U.S.C. § 1125(c)(1).

■ As discussed above, VICTORIA'S SECRET is an arbitrary mark, entitled to the highest degree of protection. The VICTORIA'S SECRET Mark has been used by Defendants since at least 1982 and registered as a trademark since at least 1981. The reach of the VICTORIA'S SECRET Mark is enormous, with more than 1300 retail stores, annual circulation in excess of 350 million catalogues, and a vastly popular e-commerce site. Annual sales under the VICTORIA'S SECRET Mark approach three billion dollars. (Mitchell Decl., Ex. 3) The VICTORIA'S SECRET Mark is used in and for goods sold through Victoria's Secret's exclusive channels of distribution.

Thus, the facts unequivocally demonstrate that the VICTORIA'S SECRET Mark is one of the world's most famous and distinctive trademarks. *Cf. Carnival,* 74 F.Supp.2d at 1270 ("There is no question that the trademark for 'Carnival' is sufficiently famous."); *Michael Caruso & Co., Inc. v. Estefan,* 994 F.Supp. 1454, 1463, *aff'd,* 166 F.3d 353 (11th Cir.1998) ("[W]hile 'Bongo' may be a distinctive mark in the junior women's apparel market, it is not a generally famous mark like 'Exxon' and 'Kodak.'"). This Court agreed as much in the *Chandnani* decision. (Ex. 1, p. 5) ("It is agreed that the VICTORIA'S SECRET'S famous mark is registered on the Principal Register of the PTO ..."); *see also, V Secret Catalogue v. Victor's Little Secret,* 54 U.S.P.Q.2d 1092, 1096 (W.D.Ky.2000) ("Defendants do not challenge Victoria's Secret claim that its mark is famous.").

Plaintiff VCS's adoption and use of its trade name plus registration of its domain names came long after the VICTORIA'S SECRET Mark became famous. (*See*

Compl., ¶ 5.) In fact, Plaintiff VCS is unable to proffer any credible evidence that Plaintiff CVS adopted "VICTORIA'S SECRET" as a mark for adult entertainment websites before Defendants Victoria's Secret's internationally renowned VICTORIA'S SECRET Mark became famous. More importantly, like the defendants in *Squibb,* it is apparent that Plaintiff VCS selected "VICTORIA'S SECRET" as the name for its websites to trade off the fame and immense goodwill enjoyed by the VICTORIA'S SECRET Mark. *See Squibb,* 17 U.S.P.Q.2d at 1452.

Plaintiff VCS's registration of its domain names which incorporate fully the VICTORIA'S SECRET Mark for adult entertainment websites is likely to tarnish and blur Defendants Victoria's Secret most valuable possession, their mark.

Tarnishment in the trademark sense occurs " 'when a famous mark is linked to products of poor quality or is portrayed in an unwholesome manner.' " *Sigma Chi,* 2000 U.S. Dist. LEXIS 6332, at *34–35. That CVS's domain names and trade name, by its own admission, will be used for entertainment of a lascivious nature suitable only for adults mandates a finding that CVS's domain names and trade name are likely to tarnish the VICTORIA'S SECRET Mark. *Ford Motor Co. v. Lapertosa,* 126 F.Supp.2d 463, 466 (E.D.Mich.2000) ("Courts uniformly have held, and this court agrees, that the use of a famous trademark in a domain name to purvey pornography constitutes dilution."); *Toys "R" Us v. Akkaoui,* 40 U.S.P.Q.2d 1836, 1838 (N.D.Cal.1996).

The other aspect of dilution—blurring— "occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Panavision, Int'l, v. Toeppen,* 141 F.3d 1316, 1326 n. 7 (9th Cir.1998); *see*

*also Sigma Chi,* 2000 U.S. Dist. LEXIS 6332, at *35. Plaintiff VCS's continued intention to use the VICTORIA'S SECRET Mark for Plaintiff's future websites constitutes a classic example of dilution by blurring the VICTORIA'S SECRET Mark because, if allowed, consumers may no longer perceive the VICTORIA'S SECRET Mark as representing a single source or origin.

Finally, Plaintiff VCS's use is commercial and in commerce as a result of its registration of its domain names, stated intent to commence use of the four domain names for adult entertainment websites as well as its offer to transfer these domain names to Victoria's Secret (*see* Colucci Decl. ¶ 5, Ex. 6) and its extensive preparations to operate these websites, which include forming a partnership and entering into service contracts with third parties (*id.* Colucci Decl., ¶ 8, Ex. 9, and ¶ 13, Ex. 13.) *See also Trade Media Holdings Ltd. v. Huang & Associates,* 123 F.Supp.2d, 233, 242 (D.N.J.2000).

Accordingly, Plaintiff VCS's use of the VICTORIA'S SECRET Mark constitutes a violation of the FTDA entitling Defendants Victoria's Secret to summary judgment as a matter of law.

**G. Fifth Counterclaim, Trademark Dilution—(Florida Statute § 495.15); Sixth Counterclaim, Deceptive and Unfair Practices and Florida's Consumer Protection Law (Florida Statute § 501.204); Seventh Counterclaim, Common Law Trademark Infringement and Unfair Competition.**

■ The same facts and legal analysis giving rise to a finding that Defendants Victoria Secret have established their entitlement to summary judgment on their first counterclaim (violation of the Anticybersquatting Consumer Protection Act),

their second counterclaim (federal trademark infringement), their third counterclaim (Unfair competition in violation of federal law), their fourth counterclaim (federal trademark dilution) impel the conclusion and merit of finding of intentional trademark infringement, unfair competition and dilution under the State of Florida and common law infringement claims.

## H. Damages.

### 1. Statutory Damages.

■ The Court concludes that Plaintiff VCS's conduct violates Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). In the instant case, three prongs of the ACPA have been met. First, the VICTORIA'S SECRET Mark is a famous and distinctive trademark worthy of trademark protection. Second, Plaintiff CVS's four registered domain names are confusingly similar to the VICTORIA'S SECRET Mark. Third, Plaintiff CVS satisfied a majority of the statutory factors in determining bad faith intent when registering the four domain names. Under the ACPA, this Court may award the prevailing party damages "in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). In addition, this Court may order the forfeiture or cancellation of the domain name or alternatively, transfer the domain name to the owner of the mark. *See* 15 U.S.C. § 1125(d)(1)(C) ("In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.") This Court finds that Defendants Victoria's Secret are entitled to damages in the amount of $ 40,000.00 ($10,000 per domain name). The Court further orders the transfer of the four domain names (i.e., victoriassexsecret.com, victoriassexysecret.com, victoria-

sexsecret.com, and victoriasexysecret.com) from Plaintiff CVS to Defendants Victoria's Secret as originally ordered by the NAF within fourteen (14) days of the date of this Order.

### 2. Attorney's Fees.

■ Under the ACPA, courts may only award attorney's fees in "exceptional cases". *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.") The Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate and willful, *see Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir.1989), or a case where there is "evidence of fraud or bad faith", *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir.1982). *See also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332 (11th Cir.2001). The determination of whether to award attorney's fees and costs in exceptional cases is within the sole discretion of the court. *See Neva, Inc. v. Christian Duplications Intern., Inc.*, 743 F.Supp. 1533, 1543 (M.D.Fla.1990). Under the circumstances of this case, the Court finds that Defendants Victoria's Secret, as the prevailing parties, are entitled to reasonable attorney's fees and costs.

### 3. Punitive Damages.

■ Punitive damages are not available under the Lanham Act. *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103 (2nd Cir.1988). Consequently, punitive damages are not available for violations under the ACPA. However, the Court recognizes that punitive damages are available under Florida state and common laws for non-Lanham Act violations in the same action. The Court finds that there is no basis for fixing or

awarding punitive damages since Defendants Victoria's Secret failed to present any evidence of actual damages. Further, Defendants Victoria's Secret failed to state in their Counterclaim the standards for an award of punitive damages under Florida statutes and common laws. Therefore, the Court does not have a basis either in the record or in Defendants' Victoria's Secret Counterclaim to award punitive damages.

## VI. CONCLUSION

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED, ADJUDGED and DECREED that judgment be, and the same is hereby entered in favor of the Defendants against the Plaintiff Victoria's Cyber Secret Limited Partnership, said judgment to include a Permanent Injunction against Plaintiff Victoria's Cyber Secret Limited Partnership from further acts of infringement and from future registration of any of the domain names incorporating a mark confusingly similar or identical to Defendants' VICTORIA'S SECRET Mark, imposition of treble damages calculated upon the basis of statutory damages of $10,000 for each bad faith registration as set forth above, and dismissal with prejudice of Plaintiff Victoria's Cyber Secret Limited's Complaint. Further, Plaintiffs will transfer the disputed domain names to Defendant V Secret Catalogue, Inc. and destroy any advertising, promotional material, labels or other documents in its control that refer to or relate to the domain names covered by this Order. It is further

ORDERED, ADJUDGED and DECREED that the Court reserves jurisdiction to consider the setting of reasonable attorneys' fees, costs and disbursements to Defendants. It is further

ORDERED and ADJUDGED that Defendants Victoria Secret shall submit a proposed Final Judgment in accordance with this Order within (15) fifteen calendar days from the date of entry of this Order.